In re SHAH INTERNATIONAL,
INC., Debtor.

In re SHAH RESTAURANTS, INC.,
d/b/a El Sombrero Restaurant,
Debtor.

In re 322 CORPORATION, f/d/b/a El
Sombrero Restaurant, Debtor.

In re 7259 CORPORATION, d/b/a El
Sombrero Restaurant, Debtor.

In re 17160 CORPORATION, d/b/a El
Sombrero Restaurant, Debtor.

Bankruptcy Nos. 88–04314 to 88–04318.

United States Bankruptcy Court,
E.D. Wisconsin.

Dec. 16, 1988.

John R. Byrnes, U.S. Trustee.

Howard A. Schoenfeld and Paul Lucey, Milwaukee, Wis., for debtors.

David V. Jennings, III, for Tetraco, Inc.

Randall D. Crocker, Milwaukee, Wis., amicus.

William S. Pocan, Waukesha, Wis., for Phillip Brooks.

Bruce McIlnay, Milwaukee, Wis., for Peter Profumo.

## AMENDED DECISION

RUSSELL A. EISENBERG,
Bankruptcy Judge.

Shortly after involuntary petitions in bankruptcy (all Chapter 7) were filed against these five debtors, but prior to the entry of any order for relief, the five debtors, which have the same principal shareholder, retained the same law firm. Since no cash was available for a retainer, the law firm took a real estate mortgage from one of the debtors, and another real estate mortgage from another debtor, to secure the legal fees of all five debtors in a total sum not to exceed $80,000.00. The debtors' legal counsel agreed to accept employment only on the condition that its cross-collateralized real estate mortgages would be approved by the court. Immediate full disclosure of all action taken was given to the court, the United States trustee, the Internal Revenue Service and certain creditors and attorneys. Several creditors and the United States trustee objected both to

the taking of the real estate mortgages and to the cross-collateralization of the mortgages.

This court has an established policy regarding retainers for debtors' counsel. In other cases this court has ruled that, depending upon the circumstances and pursuant to firm guidelines established by the court, a law firm could accept a *prepetition* retainer in the form of cash and/or a lien on personal property or a mortgage on real estate. The court required that the retainer be held solely as security for fees which may be approved by the court at a future date, so that the retainer, in effect, remained the property of the debtor. In passing on fees, for many years this court has applied flexible standards similar to those stated in *In re Martin*, 817 F.2d 175 (1st Cir.1987).

This court has also ruled in other cases that, in a voluntary case, an attorney could *not* receive a *postpetition* retainer either in the form of cash or as a mortgage on any property without notice to all creditors and approval of the court, which approval was rarely, if ever, granted over the objection of any interested person. This was in accordance with *In the Matter of Allen*, 816 F.2d 325, 327 (7th Cir.1987), which held that 11 U.S.C. § 549(a) permits the trustee to avoid a postpetition transfer, and with 11 U.S.C. § 549.

What is not settled, and what is at issue in this matter, is whether an attorney can take a retainer during the gap period, that is, the period between the time an involuntary petition is filed and the time an order for relief is entered.

Shah International, Inc. was an importer. The other four debtors were or still are in the restaurant business. After counsel for the debtors were retained, four debtors converted to Chapter 11. At this time, only two of the debtors are operating restaurants, and those are the corporations which granted the real estate mortgages. The mortgages are on the land and improvements upon which the operating restaurants are situated. Both mortgaged parcels are encumbered by prior real estate mortgages and tax liens. The two parcels are for sale, but there are no known interested buyers, even at sharply reduced asking prices. In a worst case scenario, there may be no equity in either parcel. If these cases were all converted to Chapter 7, it is doubtful there would be any funds available for unsecured creditors. The granting of the mortgages will have little, if any, impact on prepetition unsecured creditors because the expenses of administration must be paid before the prepetition unsecured creditors receive any distribution. It matters not to unsecured creditors whether the expenses of administration are secured. The fundamental objectives of these cases will not be thwarted by the granting of the mortgages.

The two real estate mortgages are intended to serve as a retainer for counsel for the debtors. Their practical effect is to preserve certain potential assets to make certain that those persons who assisted the debtors in making their best efforts in having successful reorganizations have a fighting chance of being paid at the conclusion of the cases if the cases are successful. While the mortgages prevent the debtors from obtaining bank loans secured by mortgages on the real estate, it is highly unlikely that any financial institution would lend money to either debtor. One of the debtor-mortgages is not operating profitably, and the other is barely profitable.

■ For a debtor to be successful in Chapter 11, it is imperative that the debtor have skilled legal counsel. As was stated in *In re Martin*, 817 F.2d 175, 181, "It will sometimes be difficult to obtain competent counsel in anticipation of a bankruptcy proceeding unless the lawyer's financial well-being can be assured to some extent." Equitable principles govern the exercise of bankruptcy jurisdiction (*Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966)), and legal counsel have rights, as do other persons in the case. One right is a reasonable opportunity to be paid in a bona fide case, whether commenced by a voluntary or an involuntary petition. A putative debtor should not be prevented from obtaining skilled counsel solely because the debtor is in bankruptcy

only because creditors succeeded in filing an involuntary petition prior to the time the debtor filed a voluntary petition.

■ The granting of the mortgages by the two mortgagor-debtors was reasonable under the existing circumstances. The amount of the potential debt secured by the mortgages was reasonably negotiated in good faith. The security demanded by counsel was commensurate with the predictable magnitude and the value of the foreseeable services. The mortgages were a needed means of ensuring the engagement of competent counsel. There were no telltale signs of overreaching. There is little likelihood of the mortgages resulting in an actual conflict. The acceptance of the mortgages should result in little, if any, influence on subsequent decision making under the guidelines being established by this court. The granting of these mortgages made it possible for the debtors to obtain skilled counsel. Counsel for the debtors do not have any incentive to act contrary to the best interests of the estates by virtue of their acceptance of the mortgages. The attorneys did not set aside for themselves the most promising assets of the estates as a precondition to handling these cases.

Some courts have distinguished between a retainer in the form of cash and a retainer in the form of a mortgage on real estate or a security interest in personal property and are more liberal in allowing cash retainers. In the opinion of this court, the difference is of no significance. Often it is to the advantage of all persons for a retainer to be in the form of a real estate mortgage . or a security interest in personal property, as that frees up badly needed cash.

Objecting creditors questioned whether counsel for the debtors could remain disinterested if they were permitted to retain the mortgages. Applying objective standards, under the circumstances of these cases, this court finds that counsel for the debtors remain disinterested persons notwithstanding their acceptance of the mortgages. This court agrees with the reasoning and holding of *In re Martin,* 817 F.2d

at 182, to that effect. *See also* 11 U.S.C. §§ 101(13) and 327(a). This court assumes that there was compliance with the following Wisconsin Supreme Court Rules, which provide in relevant part:

*SCR 20:1.7 Conflict of interest: general rule*

(b) A lawyer shall not represent a client if the representation of that client may be materially limited ... by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. . . .

*SCR 20:1.8 Conflict of interest: prohibited transactions*

(a) A lawyer shall not ... knowingly acquire a possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto. . . .

(j) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) acquire a lien granted by law to secure the lawyer's fee or expenses
. . .

This court has applied a flexible standard in reviewing matters pertaining to prepetition retainers, and it will do the same in matters pertaining to retainers received during the gap period in an involuntary case. Each case will be decided upon its own merits. That is within the language and intent of 11 U.S.C. § 303(f), which permits a debtor to use property in an involun-

tary case, subject to limitations in 11 U.S.C. § 549(a).

This court concludes that the debtors may retain their chosen counsel pursuant to 11 U.S.C. § 328(a), and that such counsel may retain both real estate mortgages subject to the following terms and conditions:

1. Both mortgages shall be in the nature of retainers. In part, they shall be security for fees and expenses of counsel for the debtors. They shall not constitute fees as such. All fees remain subject to court approval even though there are fee agreements between the debtors and their counsel. (See *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573–75 (Bankr.N. D.Texas 1986)). As was stated in *In re Burnside Steel Foundary Co.*, 90 B.R. 942, 945 (Bankr.N.D.Ill.1988), "In general, Chapter 11 retainers are not flat fees for all services to be performed in a specific case. Instead, Chapter 11 retainers are usually held by an attorney as security for the payment of fees for professional services to be rendered when requested by a client."

2. The mortgages shall also be available for *all* administrative claimants based upon the priority of their claims. The mortgages do not give counsel for the debtors priority over other Chapter 11 administrative claimants or over certain Chapter 7 claimants. (See 11 U.S.C. §§ 503(b) and 726(b)).

3. Each real estate mortgage shall secure only the administrative claims of each mortgagor.

4. There shall be no cross-collateralization of either mortgage, except in the unlikely event of substantive consolidation. Neither mortgage secured any claim, administrative or otherwise, of any other debtor.

5. Notice of this decision shall be given promptly by each debtor to all creditors. Creditors shall be advised that they may object to the order allowing this fee arrangement within fourteen days of the date of mailing, and that their objections must specify both the factual and legal bases for the objections. If an objection is timely served and filed, the court will schedule a hearing on the objection.

6. By the twentieth day of each and every month, counsel for each of the mortgagor-debtors shall file with the United States trustee and the court a statement of all legal services rendered for the preceding month, broken down by date, activity, name of attorney or paralegal performing the services, time by tenths of an hour, and the dollar amount of fees and costs. There shall be a separate analysis by project with the work categorized into a reasonable number of projects.

It is assumed that counsel for the debtors will remain alert to other expenses of administration while these cases proceed.

This decision constitutes the findings of fact and conclusions of law of this court. An order consistent with this decision will be entered.