## In re MAY LUMBER CO., Debtor.

### Bankruptcy No. 91–42246–2.

United States Bankruptcy Court,
W.D. Missouri.

Jan. 6, 1992.

See also 131 B.R. 144.

Joel Pelofsky, Norris Greer, Shughart, Thomson & Kilroy, Kansas City, Mo., for debtor.

Bruce E. Strauss, Kansas City, Mo., for petitioning creditors.

Gary Barnes, Kansas City, Mo., trustee.

Cynthia Edwards, U.S. Trustee Office.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Three creditors filed an involuntary Chapter 7 petition against May Lumber Co., hereinafter debtor, on July 9, 1991. Debtor engaged counsel to "provide advice and counsel regarding the involuntary petition and debtor alternatives". Debtor put up a spirited defense to the involuntary petition on the grounds of improper service of the involuntary petition. Debtor prevailed, for the moment, at a hearing held on July 30, 1991. The petitioning creditors then obtained admittedly good service. Debtor thereupon filed a voluntary petition under Chapter 11 on August 28, 1991 and the order was signed August 30, 1991. On September 9, 1991, the United States Trustee filed a Motion To Convert the case to a Chapter 7. The U.S. Trustee's reasons were that debtor had already ceased operation of its business, had already held an auction of all its personalty, and had no reason to operate except to liquidate the real estate and buildings where the business used to be. On October 1, 1991, at a hearing scheduled to hear said motion, debtor consented to the conversion to Chapter 7.

Counsel for debtor seeks $6,908.02 compensation from the estate for services rendered during the "gap period" of July 9, 1991 to August 30, 1991. The Trustee opposes same as do the petitioning creditors.

It is the contention of debtor that during the gap period, the debtor is entitled to, as Robert Herrick so poetically expressed it:

"Gather ye rosebuds while ye may,
Old Time is still a-flying,
And this same flower that smiles today
Tomorrow will be dying".

    *Hesperides.* *To The Virgins To Make Much Of Time.* (Herrick, 1648).

While debtor's exposure to continued existence outside Title 11 of the United States Code exceeded the expectancy of a rosebud, the Court does note that it was a short but expensive interlude. Certainly the Trustee and the petitioning creditors believe counsel seek an excessive amount for attempting resuscitation of a debtor possessing some $40,000.00 cash from the auction of personal property, together with real estate that appears to have limited, if any, value above the liens and cleanup costs, as opposed to priority debts of $71,-131.48, and unsecured debts of $214,593.32 owing to professionals, suppliers and other trade creditors.

The question then is whether a debtor is free to engage any professional, for any reason, and for any amount, during the gap period, or whether any fees charged by said professional during the gap are subject to 11 U.S.C. § 327 and § 328 constraints. The answer seems to lie somewhat between the two poles set out above based on the very limited authority the Court can find on this matter. The first case somewhat in point is *Amtel, Inc. v. Sun Spec Industries, Inc.,* 3 B.R. 703 (Bkrtcy.S.D.N.Y.1980). In that instance *Sun Spec* was the putative debtor named in an involuntary petition. It employed counsel and delivered to them its check for $20,000.00. That check twice failed to clear the bank prior to adjudication. *Amtel* sought to enjoin those counsel from attempting to negotiate the check after adjudication and to enjoin *Sun Spec,* debtor in possession, from paying the check. The court said:

"... prior to the entry of the order for relief in an involuntary case, an alleged debtor can, as was the situation here, retain, and issue a check to, counsel as if no case had been commenced against the debtor". l.c. 705.

The quote, of course, is dicta because the case turned on the fact that counsel did not get paid before adjudication and the court, most properly, held that any post adjudication payment of pre adjudication debt was subject to court review.

The second case somewhat in point is *In re Shah Intern., Inc.,* 94 B.R. 136 (Bkrtcy. E.D.Wisc.1988). In that case, involuntary petitions were filed against five corporations, all having the same principal stockholder. All five putative debtors engaged the same counsel who took real estate mortgages from two of the debtors to secure legal fees for all five debtors up to $80,000.00. Full disclosure was made— just as in the case under submission. The United States Trustee and several creditors objected. Judge Russell A. Eisenberg made two very cogent points in his opinion. He said:

"Equitable principles govern the exercise of bankruptcy jurisdiction ... and legal counsel have rights, as do other persons in this case. One right is a reasonable opportunity to be paid in a bona fide case, whether commenced by a voluntary or an involuntary petition". l.c. 137.

Further, he stated:

"A putative debtor should not be prevented from obtaining skilled counsel solely because the debtor is in bankruptcy only because creditors succeeded in filing an involuntary petition prior to the time the debtor filed a voluntary petition". l.c. 137, 138.

However, after issuing these statements he ruled that gap period retainers should be judicially controlled with the same flexible standard as prepetition retainers, and that each case would be decided on its own merits. In justifying his ruling, he stated:

"That is within the language and intent of 11 U.S.C. § 303(f), which permits a debtor to use property in an involuntary case, subject to limitations in § 549(a)". l.c. 138, 139.

This Court is reluctant to adopt such a flexible standard because it provides so little guidance for parties or counsel. Nevertheless, it believes Judge Eisenberg is right and the only standard that can be

used is a flexible one. Such a standard is sometimes referred to as the "smell test". Of course, the problem with such a standard is that in every instance neither students of the olfactory sense nor the scientists employing expensive instruments have ever been able to establish an objective measure upon which unpaid experts could agree. Equally unpalatable to this Court is the fact that flexible standards lead only to more cases because the parties are not quite sure just how flexible the adjudicatory authority will be on any given day.

 Nevertheless, the Court will adopt the so called flexible standard, setting only these parameters:

1. A gap debtor may engage counsel of choice;

2. A gap debtor may pay counsel of choice what is mutually agreeable between debtor and counsel;

3. The aforesaid payment is subject to the test of reasonableness under the circumstances, if the debtor winds up in bankruptcy;

4. The bankruptcy judge is (hopefully) an expert in the area of reasonableness and thus, all fees are subject to his tender mercies.

This said, what of the facts herein. Debtor engaged skilled counsel. As such, skilled counsel should have recognized immediately that avoidance of Title 11 and its inevitable consequences was impossible. Counsel had an obligation to advise debtor of these facts. Actions taken thereafter to avoid or delay adjudication had to be either unreasonable or solely at the whim of the debtor, with counsel knowing the inevitable result and willingly participating in delaying the process. This is not intended as a unilateral condemnation of counsel. The debtor may have decided to "go to the wall" despite the advice of counsel. If so, that is the debtor's option, but not at the expense of the estate. Where what counsel does in the gap period is not reasonable and/or benefits only the debtor, it is only the debtor who should pay—not the estate.

Counsel's detailed billing lists $1,679.50 expended in counseling about the bankruptcy and opposing the involuntary petition and the subsequent motion to convert by the U.S. Trustee. The Court will allow $650.00 for said services. The detailed billing lists $898.00 for "attention to accounts receivable". No accounts receivable were collected. The Court will allow $260.00 for said services. The detailed billing lists $4,330.52 for other services including expenses of $398.52. Of the $3,932.00 plus expenses of $398.52 billed for other miscellaneous services and expenses, the Court will allow $2,332.00 for services. The Court will allow $398.52 in expenses. The total allowance of all fees and expenses then will be $3,640.52.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.