In the Matter of SUN SPEC INDUSTRIES, INC., d/b/a Hanco Art & Novelty Company and Specialty Industries, Debtor.

AMTEL, INC., Plaintiff,

v.

SUN SPEC INDUSTRIES, INC., Defendant.

Bankruptcy No. 80 B 10126.
Adversary Proceedings No. 80–5022–A.

United States Bankruptcy Court, S. D. New York.

March 10, 1980.

Berman & Zivyak, P.C., New York City, for debtor.

Edwards & Angell, New York City, for plaintiff.

Irving H. Picard, U. S. Trustee, New York City.

## DECISION ON MOTION FOR PRELIMINARY INJUNCTION

EDWARD J. RYAN, Bankruptcy Judge.

An involuntary case was commenced against Sun Spec Industries, Inc. (Sun Spec) on January 30, 1980, by the filing of a petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 701 et seq.) by three of its creditors. See 11 U.S.C. § 303(b)(1). On February 15, 1980, on the debtor's motion, pursuant to 11 U.S.C. § 706(a), the case was converted to one under Chapter 11.

Between the time of the filing of the involuntary petition and the conversion of the case, Sun Spec retained Berman and Zivyak, P.C., as its counsel and issued to that law firm a check in the amount of $20,000 for services to be rendered in connection with the conversion of the case and in the subsequent proceedings.[1] The law firm deposited the check in its account on February 13, 1980, two days before the case was converted and the order for relief was entered. The check apparently was dishonored twice on the ground of insufficient funds.

Amtel, Inc., a creditor of Sun Spec, filed a complaint on February 8, 1980, seeking relief from the automatic stay (11 U.S.C. § 362(a)), so that it might foreclose upon certain property of the debtor in which Amtel claims to have a security interest. By order to show cause, which was returnable on February 27, 1980, Amtel also sought to enjoin the defendant from paying Berman and Zivyak the amount of the outstanding check ($20,000).

In response to this court's oral request,[2] at a February 27, 1980 hearing, the United States Trustee submitted a *Memorandum of the United States Trustee* dealing with the issue of the payment of counsel fees to the attorneys for Sun Spec Industries, Inc.—a payment which, if made, would occur after Sun Spec had filed its Chapter 11 petition—a matter relating to the administration of the case.[3] The Memorandum submitted by the United States Trustee ably reflects this court's opinion.

While we are aware that it may be "the custom of the bankruptcy bar [in Chapter 11 cases] to obtain fees in advance which

1. At the hearing on February 27, 1980, at which Amtel, Inc., a creditor, was seeking to enjoin any post-petition payment to counsel for the debtor, the court was informed that the value of counsel's time already expended in the case was about $7,000, including the filing of the petition.

2. See, Interim Bankruptcy Rule X–1005(a), which provides, in pertinent part:
"The United States Trustee may . . . be heard on any issue relating to his respon-

sibilities in a case under the Bankruptcy Code."

3. The United States Trustee is responsible for, among other things, supervising "the administration of cases . . . under chapter . . . 11 . . . " of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. See, also, 28 U.S.C. § 586(a)(3), as added by Section 224(a) of Title II of the Bankruptcy Code.

cover both pre- and post-filing services," *In re Arlan's Department Stores, Inc.*, 925 F.2d 615, 5 Bankr.Ct.Dec. 973, 981 (2d Cir. 1979), the payment of such fees "unquestionably [is] subject to judicial review and scrutiny" (*Id.* at 935, 5 Bankr.Ct.Dec. at 982).[4] But, under the facts of this case, we are dealing with an attempted post-petition payment by the debtor in possession[5] for services rendered in connection with the filing of the case and for post-petition services to be rendered by counsel. We have found no authority that would permit the payment that apparently is contemplated in this case—whether by a re-presentment for collection of the original check or the issuance of a new check to counsel by the debtor in possession. In our view, such a payment would violate the statutory framework of the Bankruptcy Code.

■ The general rule is as stated by Berman and Zivyak (Memorandum, pp. 3–8) that, pursuant to Section 303(f) of the Bankruptcy Code, 11 U.S.C. § 303(f), prior to the entry of the order for relief in an involuntary case, an alleged debtor can, as was the situation here, retain, and issue a check to, counsel as if no case had been commenced against the debtor.[6] But, that rule can only be applicable in a bankruptcy case if the debtor's check is processed through the banking system and the presenting bank is able to collect the proceeds.[7] Here, of course, there was no payment on the check and the check was dishonored—not once, but twice. Thus, the firm of Berman and Zivyak was not paid prior to the entry of the order for relief on February 15, 1980. The fact that it (or its bank) currently has possession of Sun Spec's check does not alter the situation because any payment necessarily would be by funds belonging to a debtor in possession, a payment which is subject to court review on a proper application.[8]

■ At least, Berman and Zivyak would appear to be in the position of a "gap creditor" under Section 549(b) of the Bank-

**4.** Like the Court of Appeals in *Arlan's*, "[w]e are not insensitive to the financial drain imposed upon a law firm which is about to undertake" representing a debtor in what may be a complicated and long drawn out case. *Id.* at 936, 5 Bank.Ct.Dec. at 982.

**5.** Although arising in the context of cases under the now repealed Bankruptcy Act of 1898, the following language of the Court of Appeals for the Second Circuit is just as applicable to cases under Chapter 11 of the Bankruptcy Code:

"A debtor-in-possession . . . or a trustee . . . is *not* the same entity as the pre-bankruptcy company." *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.*, 519 F.2d 698, 704 (1975) (emphasis in original).

Accordingly, "the debtor-in-possession . . . act[s] as a new juridical entity." *Brotherhoood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO v. REA Express, Inc.*, 523 F.2d 164, 170 (2d Cir. 1975), *cert. denied*, 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975) and 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 82 (1976).

**6.** Section 303(f) provides in pertinent part:

"[E]xpert to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced."

Even in such a situation as described in Section 303(f), payments to counsel prior to the entry of the order for relief for services to be rendered in connection with the case are subject to court review. Furthermore, the court may order a return of any compensation to the extent it concludes that any payment "exceeds the reasonable value of any . . . services" rendered. 11 U.S.C. § 329(b). *See, Haar v. Oseland*, 265 F.2d 218 (2d Cir. 1959). *See, also,* 2 *Collier on Bankruptcy*, pp. 329–3 to 329–12 (15th ed. 1979), for a general discussion of Section 329 (among other things, requiring an attorney to disclose under subsection (a) the source of funds from which payment is to be made).

**7.** The processing and collection of items within the banking system, such as the check involved in this case, are matters covered in the Uniform Commercial Code. The processing of a check is not completed until the payor bank has paid the item and, among other things, the transaction cannot be reversed. U.C.C. 4–109. Furthermore, settlement is not final until the presenting bank collects the funds from the payor bank. U.C.C. 4–201.

**8.** *See, In re Arlan's Department Stores, Inc., supra*, 615 F.2d at 925, 5 Bankr.Ct.Dec. at 987.

ruptcy Code, 11 U.S.C. § 549(b)—here, one who has rendered services between the time of the filing of the involuntary petition and the entry of the order for relief but who has not received compensation therefor. A "gap creditor" would have an allowable claim under 11 U.S.C. § 502(f).[9] In this case, however, the claim of Berman and Zivyak might better be treated as an administrative expense entitled to a first priority. 11 U.S.C. § 503(b)(2) and § 507(a)(1).

As an administrative claimant at this stage, under *Haar v. Oseland* (note 6, *supra*) the firm of Berman and Zivyak is entitled to compensation only "for actual necessary services [it] rendered"[10] to Sun Spec in connection with the filing of its Chapter 11 petition, such compensation being subject either to the provisions of Section 330(a) (payment at the conclusion of a case) or Section 331 (interim compensation), 11 U.S.C. § 330(a), 331.[11] It would be inappropriate at this stage in a case that is approximately four weeks old, for this court to entertain an application for interim compensation, the primary purpose of which is to alleviate economic hardship of counsel who otherwise would have to carry the case.[12]

▮ For the foregoing reasons, this court enjoins, without prejudice to a proper application therefor, the payment of any compensation by Sun Spec to its counsel on account of services rendered in connection with this Chapter 11 case.

It is so ordered.

---

**9.** We note that the allowed claim of a "gap creditor" is accorded a second priority. 11 U.S.C. § 507(a)(2).

**10.** H.Rep. No. 95–595, 95th Cong., 1st Sess., 329 (1977), U.S.Code Cong. & Admin.News, p. 5787.

**11.** Because counsel has not filed an application for compensation, we do not here express any view with respect to the "notice and hearing" requirement in those sections and what type of notice would be appropriate in this case. *See,* 11 U.S.C. 102(1).

**12.** 2 *Collier on Bankruptcy*, p. 331–1 (15th ed. 1979).