**In re McNAR, INC., Debtor.**

**Bankruptcy No. 88–09051–H11.**

United States Bankruptcy Court, S.D. California.

July 13, 1990.

**747**

David L. Buchbinder, David L. Buchbinder & Associates, San Diego, Cal., for debtor.

Donald Merkin, Jerry D. Hemme, Merkin & Hemme, P.C., La Jolla, Cal., for Narain.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

Presently pending is the application of David L. Buchbinder and Associates ("applicant") for allowance of fees and reimbursement of costs as counsel for alleged debtor in possession, McNar, Inc. ("McNar"). At issue is whether applicant is entitled to compensation for attorneys' fees and costs pursuant to § 330(a) of the Bankruptcy Code.[1] Applicant contends that the services rendered on behalf of the debtor in possession were reasonable under § 329. Creditors/equity security holders Kanwar and Ragini Narain ("Narain") filed an objection.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157 and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceed-

ing pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## FACTS

On November 22, 1988, an involuntary petition seeking an order for relief under Chapter 11 of the Bankruptcy Code was filed against McNar. Applicant was purportedly retained as counsel for McNar prior to the filing of the involuntary petition, and represented McNar on an active basis from November 21, 1988 through approximately January 12, 1989, when this court entered an Order for Relief in this matter and, ordered the appointment of a trustee. The United States Trustee appointed Richard Kipperman the Chapter 11 trustee by order entered January 6, 1989.

Applicant was subsequently retained to act as the trustee's counsel, and an order approving applicant's retention by the trustee was approved by this court on January 19, 1989. Subsequent to the trustee's decision to retain applicant as his counsel in this matter, the trustee and applicant determined that substantial opposition to applicant's retention would be raised by Narain as to whether applicant possessed a conflict of interest in this matter. Applicant and the trustee concluded that it would be in the best interests of the estate and would avoid unnecessary administrative expenses if applicant withdrew from this matter.

The pending application does not seek compensation for services rendered subsequent to the substitution of attorneys being entered by the court, except for charges incurred in connection with the present application. This application seeks compensation for services rendered and costs incurred in the representation of McNar essentially during the period prior to the entry of the order for relief ("gap period").

During the period of time covered by the pending fee application, applicant was retained by Michael McNamara, the president of McNar, to represent the interests of the corporation in connection with the filing of

1. Unless otherwise indicated, all references to Code sections shall refer to Title 11 of the United States Code.

the involuntary petition. Mr. McNamara was also a petitioning creditor in connection with the involuntary petition. Applicant never applied to this court for an order approving its employment by McNar, as applicant contends that no application is required or necessary since a majority of the services were rendered prior to the entry of the order for relief.

McNar paid applicant a $7,500.00 retainer on November 22, 1988, and an additional $7,500 retainer on January 5, 1989. On February 7, 1990, applicant filed its first and final fee application. Applicant seeks compensation in the amount of $14,031.50 in fees and $357.90 for reimbursement of expenses. Applicant requests that the fees and costs requested be deducted from the retainer received, and that any remaining credit balance be turned over to the estate.

## DISCUSSION

Applicant asserts a right to reimbursement for all attorneys' fees and costs pursuant to §§ 327(a), 330, and 331 for services rendered at McNar's request. Section 330(a) provides that the attorney for a debtor in possession may be awarded by the court a reasonable fee for actual and necessary services as well as reimbursement for actual and necessary expenses. However, an award of compensation to a professional person is subject to certain limitations. The pertinent exceptions are set forth below.

### Order Authorizing Employment

Applicant maintains that court approval of McNar's retention of counsel prior to entry of an order for relief is not required, arguing that no statutory basis exists for the court to authorize appointment of counsel for an involuntary debtor prior to entry of an order for relief. Whether court approval of retention of counsel is required prior to entry of an order for relief is a matter of first impression in this Circuit.

Under the Code, court approval is not necessary for the appointment of an attorney for the debtor in a Chapter 7 case or an attorney for the debtor out of possession in a Chapter 11 case. *See, e.g., In re Coastal Equities, Inc.,* 39 B.R. 304 (Bankr.S.D.Cal. 1984). The Code does mandate that the debtor in possession obtain court approval to employ counsel. 11 U.S.C. § 327(a); Bankruptcy Rule 2014(a); *In re McKinney Ranch Associates,* 62 B.R. 249 (Bankr.C.D. Cal.1986). Section 327(a) provides in pertinent part:

> the trustee [2], *with the court's approval,* may employ one or more attorneys, ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title. (Footnote added) (Emphasis added).

Rule 2014(a) establishes the procedure for appointment of counsel.

Applicant argues that employment of a professional is tied to the existence of either a trustee (debtor in possession) or a creditors' committee, by virtue of § 328(a) which provides that a "trustee, or a committee appointed under § 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title." Applicant recognizes that although a trustee can be appointed at any time after the commencement of a Chapter 11 case and need not await entry of an order for relief (11 U.S.C. § 1104(a)), such appointment is not the norm and requires both notice and a hearing. Applicant concludes that since neither a trustee or a creditors' committee were appointed before the order for relief was entered in this case, this court would have had no authority to act had an application for employment of counsel been made.

However, §§ 327 and 328, when read in conjunction, do not preclude the debtor from hiring counsel prior to the date, if any, at which a trustee or creditors' committee has been appointed. Section 327(a) makes it clear that the trustee, or debtor in

---

**2.** Ordinarily, a Chapter 11 debtor in possession has nearly all the rights, powers, functions, and duties of a Chapter 11 trustee. *See* § 1107(a).

possession, may employ an attorney subject to court approval.

Applicant argues that not only does the Code not require authorization of the appointment of debtor's counsel prior to entry of an order for relief, it clearly indicates that changes in the debtor's business are not contemplated during the "gap period", the time period between the initiation of an involuntary proceeding and the entry of an order for relief. Section 303(f) provides that the alleged debtor may conduct business as usual until an order for relief is actually entered. Business as usual would necessarily encompass the retention of an attorney. Debtor fails to cite the court to any cases in support of its assertion that court approval of employment is not required.

Applicant contends that the only requirement it needed to comply with is that set forth in § 329 and Bankr.R. 2016(b), which provides that the attorney for the debtor has until fifteen days after entry of the order for relief to file a disclosure of compensation paid or to be paid and the source of that compensation. Applicant disclosed retention and payment of the retainer on January 10, 1989. Applicant concludes that it would be manifestly inequitable to penalize an attorney for making disclosure within the time limits set by the Code and Rules.

Finally, applicant argues that the Code allows this court only a limited review of pre-petition attorneys fees. Section 329(b) provides "[i]f such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive...."

In the *Matter of Sun Spec Industries, Inc.,* 3 B.R. 703 (Bankr.S.D.N.Y.1980) the court stated that:

> [t]he general rule is ... that, pursuant to Section 303(f) of the Bankruptcy Code, ... prior to the entry of the order for relief in an involuntary case, an alleged debtor can, as was the situation here, retain, and issue a check to, counsel as if no case had been commenced against the debtor.

*Id.* at 705. The court further continued in a footnote:

> Even if such a situation as described in Section 303(f), payments to counsel prior to the entry of the order for relief for services rendered in connection with the case are subject to court review. Furthermore, the court may order a return of any compensation to the extent it concludes that any payment "exceeds the reasonable value of any ... services" rendered.

*Id.* at 705, n. 6.

A more recent decision discussing retention of a professional during the "gap period" is contained in *In re 222 Liberty Associates,* 110 B.R. 196 (Bankr.E.D.Pa.1990). There, the court reviewed the issue of compensation of a realtor who failed to obtain court approval of employment:

> During the "gap" period between the filing of an involuntary petition and the entry of an order for relief, "the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. § 303(f). Arguably, this provision permits the debtor to make payment "for essential services and professional services including retention of counsel" during the "gap" period without obtaining court approval or appointment of professionals employed on its behalf. [cites omitted] [2 *Collier on Bankruptcy* ¶ 303.35[1], at 303–120 (15th ed. 1990)] However, § 303(f) is based upon the premise that the debtor should not be disrupted in carrying on its business and defending against the involuntary petition itself if it wishes to do so during the "gap" period. Allowing a professional to involuntarily extract compensation from a debtor during this period is hardly within the scope of activities which § 303(f) was drafted to protect.

*Id.* at 203.

In *Liberty Associates,* the compensation was received by the realtor through means of improper conversion of an escrow account which was in possession of the realtor. Here, McNar, through its president, voluntarily paid the retainer amounts to

applicant in order to ensure applicant's retention in regards to the involuntary petition. This appears to be the type of activity contemplated by § 303(f).

■ This court finds that an order approving employment of counsel for an alleged debtor is not required prior to entry of the order for relief. However, the amount of compensation received during this "gap period" is subject to judicial review of reasonableness pursuant to §'329. Prior to that review for reasonableness, the court shall address the conflict of interest objection presented by Narain.

### Conflict of Interest

Narain objects to the payment of fees to applicant and contends that applicant's apparent and actual conflicts of interest in this case and failure to disclose such conflicts to the court mandate that the court order the disgorgement of the entire $15,000 retainer.

Applicant denies that there were any improprieties, and argues that even if there had been any improprieties, they would not provide a basis for reducing the requested fees, citing *In re Devers*, 12 B.R. 140 (D.D.C.1981) for the proposition that unless an attorney's ethical violations diminish the value of his services in a bankruptcy case, a bankruptcy court has no statutory authority for reducing the fee payable to the debtor's attorney on the basis of those violations.

■ If at any time during employment, an attorney is not disinterested or has an interest adverse to the estate regarding the subject matter of the employment, the court may deny the attorney compensation for services and reimbursement of expenses. 11 U.S.C. § 328(c); *Woods v. City Nat. Bank & Trust Co.*, 312 U.S. 262, 266, 61 S.Ct. 493, 496, 85 L.Ed. 820 (1941) ("where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation"); *In re Coastal Equities, Inc.*, 39 B.R. 304, 308 (Bankr.S.D.Cal.1984). Moreover, where such a conflict exists, a court may order the return of fees already paid. *In re B.E.T. Genetics, Inc.*, 35 B.R. 269 (Bankr.E.D.Cal.1983).

In a recent decision, an attorney's fees were disallowed due in part to a conflict which arose by virtue of the attorney's simultaneous representation of both the debtors on the one hand, and the debtors' sole equity shareholder on the other. *In re Grabill Corp.*, 113 B.R. 966, 20 BCD (CRR) 768 (Bankr.N.D.Ill.,1990). As the court explained:

> The statutory requirements are intended to prevent even the appearance of a conflict, irrespective of the integrity of the person or firm under consideration. [citation] A law firm must exercise impartial and undivided loyalty on behalf of a client and is therefore prohibited from representing conflicting interests. [citation] Once counsel is employed, "a lawyer owes his allegiance to the entity and not to the stockholder ... or other person connected with the entity." [citations]
>
> \* \* \* \* \* \*
>
> Whenever counsel for a debtor corporation has any agreement, express or implied, with management or a director of a debtor, or with a shareholder, or with any controlling party, to protect the interest of that party, counsel holds a conflict. That conflict is not potential, it is actual, and it arises the date that representation commences. [quoting *In re Kendavis Industries International, Inc.*, 91 B.R. 742, 754 (Bankr.N.D.Tex. 1988) ]
>
> \* \* \* \* \* \*
>
> The only truly safe harbor for those professionals subject to the stringent fiduciary standards of §§ 327 and 1103, is to represent only a single client when that client is in, or likely headed for bankruptcy court. Such fiduciary standards impact on fee applications because compensation is usually payable from the estate which is administered as a trust fund under the Bankruptcy Code. Hence, professionals who usually seek compensation from the estate must be held to fiduciary standards, in contrast to those who usually do not seek compensation

from the estate, such as representatives of individual creditors or equity security holders.

113 B.R. 269, 20 BCD at 771.

■ Existence of even an arguable conflict must be fully disclosed pursuant to Bankr.R. 2014 in plain view by counsel seeking eligibility for employment pursuant to § 327, even if only to be explained away. *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228 (Bankr.E.D.Cal.1988).

The court in *In re McKinney Ranch Associates*, 62 B.R. 249 (Bankr.C.D.Cal. 1986) took note of the strong policy reasons supporting the prohibition of simultaneous representation of even potential conflicts by counsel for a debtor in possession. The court explained that the representation of the debtor in possession's general partners on matters relating to the case was a potential conflict with the estate within the scope of § 327, and held that such a conflict disqualified the applicant from appointment as counsel. *Id.* at 256.

Turning to the pending application, it is clear that applicant actively represented the interests of Michael McNamara, the president of McNar, Inc. Applicant asserts that it did not undertake activities which would prejudice the rights of either party to the dispute. Notwithstanding, the actual conflict would be enough to disqualify applicant from representing the debtor in possession. The declaration of disinterest of David L. Buchbinder filed January 10, 1989 indicates that on or about November 15, 1988, Buchbinder was consulted by Michael E. McNamara regarding the financial affairs of McNar, Inc. Buchbinder advised McNamara that while a Chapter 11 filing might aid to resolve the financial affairs of McNar, Inc., the corporation could not qualify to file a voluntary petition because of the lack of the concurrence on the part of the Board of Directors.

An involuntary petition was initiated against McNar, Inc., on November 22, 1988. Michael McNamara was one of the petitioning creditors. Applicant's time sheets for November 21, 1988 indicate the following services were provided on that date:

CONFERENCE W/MCNAMARA'S RE: RESPONSE TO INVOLUNTARY; RESULTS OF 11/21/88 HEARINGAT [sic] D-35

| | | |
|---|---|---|
| DLB | 1.00 hours | 150.00 |

TELEPHONE CALL W/MRN [3] RE FILING STATUS

| | | |
|---|---|---|
| DLB | 0.10 hours | 15.00 |

PREPARATION INVOL RETN [sic] & SUMMONS; RETAINER AGMT

| | | |
|---|---|---|
| DLB | 0.30 hours | 45.00 |

---

The conclusion drawn from the time entries is that applicant had a direct involvement with petitioning creditor McNamara at the initiation of the involuntary petition, and may have even possibly prepared the involuntary petition and summons. After review of the pleadings on file in this case, the evidence strongly suggests that applicant took its direction solely from McNamara without any consideration to the interests of the other 50% shareholder of the corporation, Narain. In fact, careful inquiry into the time sheets submitted by applicant reveals that applicant had no *direct* contact with Narain, and had only limited contact with Narain's attorney Mr. Merkin. On the other hand, the time entries are replete with conferences, letters, and telephone calls to McNamara, as well as to William Rathbone, attorney for McNamara in his personal Chapter 11 proceeding.

---

**3.** While MRN is not defined in the fee application, it is presumed to refer to Mark R. Nims, attorney for petitioning creditors in the involuntary petition.

Narain urges in opposition to the pending application, that applicant was not disinterested because of this "dual representation", and further, that applicant failed to disclose all facts regarding its representation of such adverse interest. The evidence supports Narain's conclusions. As early as December 6, 1988, Narain, through his counsel Merkin, advised applicant that there appeared to be a conflict:

This letter will put you on notice that you are not authorized to represent the corporation. Enclosed is a copy of a resolution of the Board of Directors of McNar. Inc. dated May 17, 1988, which specifically appoints Mr. Narain as the in-house counsel of the corporation and states that he alone may engage outside attorneys as and when necessary. That resolution was approved in writing by Mr. McNamara and his wife. There have been no other resolutions of the Board of directors affecting that resolution.

On November 17, 1988, my client received a letter from Mr. McNamara in which McNamara purported to terminate Mr. Narain's authority under that resolution. Mr. McNamara had no authority to do that unilaterally. When we spoke on the phone you didn't seem impressed by that fact, but I challenge you to find authority that permits a president to rescind unilaterally a resolution validly passed by the Board of Directors.

Even assuming that Mr. McNamara could somehow rescind that resolution, you still cannot objectively represent the corporation. The corporation is hopelessly deadlocked and *no one* has the authority to act on its behalf. You are acting at Mr. McNamara's direction, and Mr. McNamar [sic] is clearly not acting in the corporation's interest, having filed the proceeding *against* the corporation. How can you objectively represent the corporation's interest based solely on information you received from him? The answer is that you cannot. There is an irreconcilable conflict created by the deadlock....

The problem already manifested itself when you claimed the attorney/client privilege and refused to tell me what discussions you had with Mr. McNamara concerning a response to the petition. Surely my clients, as 50% shareholders, directors and officers of the corporation have the right to participate in the defense to the petition. (Emphasis in original)

By letter dated December 9, 1988, applicant responded to the above referenced letter as follows:

I have had an opportunity to review the actual record of the various loan transactions and other activities of McNar, Inc. It is my conclusion that the corporate resolution to which you refer was obtained by your clients' [sic] from the other shareholders by fraud or undue influence. It is my further conclusion that your client's sole desire in this matter is to acquire full ownership of all of the corporate assets without having to account for the other shareholder's interest in any way whatsoever. The record clearly indicates that your client has acted solely for his own benefit as a creditor of this corporation and has not acted in the best interest of the corporation. As a result, your client cannot rely upon the alleged corporate resolution at this late date to aid in his effort to deprive the other shareholder of his rights in the corporation.

\* \* \* \* \* \*

I have been retained on behalf of the corporation and not on behalf of any individual shareholder. I intend to act fully in the best interest of the corporation as a separate entity. To the extent that this involves protecting rights that may exist in favor of Mr. McNamara so be it. However, to the extent that this will also involve protecting rights that belong to the Narain's [sic] then this will also be the case.

This does not appear to be the position of a neutral attorney for the corporation, but that of a non-disinterested attorney taking direction solely from one of the 50% shareholders.

In response to the opposition of Narain, applicant alleged that at all times after

December 6, 1988, the firm acted to preserve the status quo of the estate, as best as was possible under the circumstances, for the benefit of both disputing groups of shareholders and the general creditor body. While this may be true, it does not sufficiently rebut the finding of interest which existed at the outset of this case.

Finally, applicant contends that an ethical violation, such as the conflict at issue in the instant action, does not permit reduction of fees under § 329. A number of bankruptcy courts have disqualified counsel for a debtor in possession on the grounds that the attorneys are or may be more loyal to shareholder management or partners than to the debtor entity, because they also represent that management or those partners. This reason for disqualification has been given both when the insiders are debtors in their own bankruptcy cases, *In re Parkway Calabasas Ltd.,* 89 B.R. 832 (Bankr.C.D.Cal.1988); and when the insiders have not filed, *In re B.E.S. Concrete Products, Inc.,* 93 B.R. 228 (Bankr.E.D.Cal.1988).

■ Courts have repeatedly denied payment of fees to attorneys who have failed to disclose grounds for disqualification. They have done so even when, in retrospect, no harm has been shown from the facts that should have been disclosed. *See, e.g., Glenn Electric Sales Corp.,* 99 B.R. 596 (D.N.J.1988)

■ Disclosure is mandatory. It is not for the debtor in possession or its counsel to determine unilaterally whether a connection is relevant. The court is to review all connections and decide whether there are any disqualifying conflicts. *Matter of Arlan's Dept. Stores, Inc.,* 615 F.2d 925 (2nd Cir.1979). Disclosure is also an ongoing responsibility. If potential conflicts arise after the initial application and disclosure, they should be brought to the court's attention promptly. *In re Cropper Co., Inc.,* 35 B.R. 625 (Bankr.M.D.Ga.1983).

The sanctions for failure to disclose potential bases for disqualification are not limited to the denial of attorneys fees. The debtor in possession may suffer repercussions from disqualification after the case is underway. Withdrawal may require duplicative catch-up time of new counsel that may not be easily afforded. *See Bohack Corp. v. Gulf & Western Industries, Inc.,* 607 F.2d 258 (2nd Cir.1979) (recognizing the expense and delay of replacing counsel). The debtor in possession may also suffer from the court's vacating of orders obtained by disqualified counsel. *Matter of Cropper Co., Inc.,* 35 B.R. at 630 (order authorizing use of cash collateral set aside).

■ This court recognizes that even though there is no statutory requirement for court approval of retention prior to entry of order for relief, there may be problems which arise if counsel for an involuntary debtor fails to seek court approval of their employment. First, the court would be unable to determine whether there exist any impermissible conflicts which would cause counsel to be more loyal to shareholder management than the debtor entity. Second, once an order for relief is entered, it is clear that court approval is required for employment of counsel. Since disclosure is a continuing requirement, any connections would have to be disclosed to the court. The court could conceivably be placed in the position of denying the application of counsel that guided the involuntary debtor through the gap period. New counsel may then be required at that point to "re-invent the wheel". The hardship to be faced by the alleged debtor in possession outweighs any burden on counsel to seek approval of employment.

Specific code authority to deny fees where a conflict exists is given under § 328(c). However, that code section applies to professionals employed under § 327 or § 1103. As shown above, there is no requirement that a professional seek court approval of employment prior to the entry of an order for relief. Regardless, the denial of fees in the face of conflict is within the discretion of the court. *In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051 (5th Cir.1986). The court then must weigh the equities between denying compensation, and disciplining attorneys. That de-

termination will be made in the context of reasonableness of the services provided.

*Reasonableness*

The court has a duty to examine all applications for attorney fees even in the absence of objections, and when objections are raised, the court's review is not limited to those items objected to. *In re Watson Seafood & Poultry Co., Inc.,* 40 B.R. 436 (Bankr.E.D.N.C.1984). Under § 329(a), the court may deny compensation to an attorney, or order the return of compensation paid, if the compensation exceeds the reasonable value of the services provided. Reasonable compensation is not necessarily gauged by the legal services actually rendered, but rather by the legal services that are reasonably necessary under the circumstances of a case. *In re G.W.C. Financial & Ins. Services, Inc.,* 8 B.R. 122, 125 (Bankr.C.D.Cal.1981).

As set forth in the chart below, applicant seeks compensation for the following services. Narain proposes a decrease of fees which is also set forth below:

| Category | Time Expended | Amount | Narain Amount |
|---|---|---|---|
| Administration | 60.00 | $6,470.00 | $2,500.00 |
| Court Appearances | 5.70 | 902.50 | 902.50 |
| Fee Application | 3.60 | 647.50 | 647.50 |
| Involuntary Petition | 12.60 | 1,442.00 | 0.00 |
| Narain | 6.30 | 713.00 | 0.00 |
| Relief from Stay | 18.40 | 1,969.00 | 800.00 |
| Trustee | 12.10 | 1,771.50 | 1,771.50 |
| Totals | 118.70 | $13,915.50[4] | $6,621.50 |

Applicant contends that its involvement in the proceeding was to maintain the status quo of the estate. However, the court concurs with Narain's analysis of the fees. The amount of $6621.50 appears reasonable under the circumstances, especially where, as here, the case basically involved a dispute between 50% shareholders. The only pleadings filed by applicant prior to the entry of the order for relief were an ex parte application for order for relief, and opposition to Narain's motion to convert. Many of the time sheet entries relate solely to conversations with McNamara, and it must be noted that at least some of the fees incurred by applicant charged to "administration" of the estate involved researching an officer's authority to hire outside counsel in potential conflict with a board resolution. (See time entry for January 3, 1989, BDB 1.6 hours.)

Applicant shall be entitled to an award of attorneys fees in the amount of $6,621.50, and reasonable costs in the amount of $357.90, for a total award of $6,979.40.

The remainder of the funds obtained by applicant as a retainer shall be returned to the trustee. This award provides reasonable compensation for applicant's maintenance of the status quo.

## CONCLUSION

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy rule 7052. Applicant is directed to file with this court an appropriate Order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.

---

**4.** This total was taken directly from applicant's application. There is no explanation as to why this amount differs from the amount prayed for by applicant.