**In re Soneprasith SOULISAK, Debtor.**

**In re Joni Alicia FINEGOLD, Debtor.**

**In re Susan Michelle BENNETT, Debtor.**

**In re Barbara Marie SMITH, Debtor.**

**Bankruptcy Nos. 97–19614(MVB), 98–10315(MVB), 97–19615(MVB), 97–19616(MVB).**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Nov. 2, 1998.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

We decide the above-captioned cases together, all of which include strikingly similar factual situations. Each case involves the operations of the Debt Clinic, Inc., as well as Alan Dubow and Margo Bly Owen, Esq.

These proceedings were initiated on the United States trustee's motions to examine debtors' transactions with their attorney in four separate bankruptcy filings. The trustee asks this Court to require debtors' attorney, debtors' financial counselor and the Debt Clinic, Inc. to disgorge monies received for services rendered in each of these cases. After hearing arguments of counsel, the Court took these matters under advisement. For the following reasons, we conclude debtors' attorney and debtors' financial counselor have violated certain professional and ethical mandates. Accordingly, we order the disgorgement of all fees received in each case.

The Court possesses jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(O) and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409(a).

The Debt Relief Centers, Inc. along with the Debt Relief Law Firm, P.C. provided financial counseling and legal representation to debtors in Maryland and the District of Columbia. Alan Dubow ("Dubow") served as president of the Debt Relief Centers, Inc. and secretary of the Debt Relief Law Firm, P.C. Margo Bly Owen, Esq. ("Owen"), debtors' counsel in each of the four cases at bar, joined Dubow on the board of directors of the Debt Relief Centers, Inc. and was a shareholder of the Debt Relief Law Firm, P.C.

On February 5, 1998, Dubow entered into a consent agreement in the District of Columbia Bankruptcy Court, which required the disgorgement of fees received in six bankruptcy cases. The Court also enjoined the Debt Relief Centers, Inc. and the Debt Relief Law Firm, P.C. from practicing law before it. As a result of the District of Columbia proceedings, the court suspended Dubow's license to practice law in the District.[1]

During the District of Columbia proceedings in December of 1997, Dubow established the Debt Relief Centers, Inc. of Virginia, now called the Debt Clinic, Inc. ("Clinic").[2] Dubow acted as president and as a director of the Clinic, and Owen served as vice president. Like its predecessors, the Clinic offered financial counseling and legal representation for a standard fee. As an unlicensed attorney, Dubow contracted with Owen to perform legal services on behalf of the Clinic's clients.

Dubow and Owen followed the same procedure in handling Soulisak's, Finegold's, Bennett's and Smith's (collectively "debtors") bankruptcy petitions. Each debtor first met with Dubow, who reviewed debtors' financial information and provided forms for debtors to complete. After this initial consultation, debtors met again with Dubow, who then presented them with their bankruptcy petition to sign. Debtors did not meet with

---

1. The District of Columbia Board of Professional Responsibility since has recommended Dubow's disbarment to the District of Columbia Court of Appeals. Florida previously revoked Dubow's license to practice in 1994 for misappropriation and commingling of client funds, check kiting and issuing worthless checks.

2. The Clinic's Articles of Incorporation list December 29, 1997 as the corporation's effective date. Debtors Soulisak, Finegold and Bennett met with Dubow before this date in order to file their petitions by December 31, 1997.

Owen, their attorney, until their respective section 341 creditors' meeting. The United States trustee filed motions to examine debtors' transactions with debtors' attorney on the grounds that this procedure constituted the unauthorized practice of law.[3]

■ Attorneys who practice before a bankruptcy court must not only concern themselves with the obligations set forth in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, but also with the application of state ethical rules.[4] 1 COLLIER ON BANKRUPTCY ¶ 8.02[4], p. 8–9 (Lawrence P. King et al. eds., 15th ed. rev.1997). Dubow, Owen and the Clinic's operations have run afoul of all three.

■ The Virginia Code of Professional Responsibility outlines the mandatory minimum level of acceptable conduct for attorneys. 1 COLLIER ON BANKRUPTCY ¶ 8.02[2], p. 8–12

(Lawrence P. King et al. eds., 15th ed. rev. 1997). Disciplinary Rules 3–101 and 3–104 of the Virginia Code prohibit the unauthorized practice of law and an attorney's assistance in another's unauthorized practice of law.[5] VA. SUP.CT. R. pt. 6 § 1 (1997); VIRGINIA CODE OF PROFESSIONAL RESPONSIBILITY DR 3–101 & DR 3–104 (1997). A nonlawyer giving assistance to the general public in the completion of forms, such as wills, leases, power-of-attorney, bills of sales, or rendering legal advice concerning the completion of these forms constitutes the unauthorized practice of law. Virginia Comm. on Legal Ethics and the Unauthorized Practice of Law, Comm. Op. 73 (1996); Virginia Comm. on Legal Ethics and the Unauthorized Practice of Law, Comm. Op. 1600 (1996). We see no reason not to apply this same rule to the preparation of debtors' bankruptcy petitions.

---

**3.** This Court in *In re Tracy Lynn Smith* (Bankr. E.D.Va.98–10316), another case handled by Dubow, Owen and the Clinic, previously ordered the disgorgement of fees under the same circumstances.

**4.** Dubow also never submitted an application to the Virginia State Bar for a certificate of registration as a professional law corporation as required by the Supreme Court of Virginia. The State Corporation Commission of Virginia may order dissolution of any corporation, or revoke its certificate of authority to transact business in Virginia, upon a finding that any officer, member, agent or employee has participated in the unauthorized practice of law. VA SUP.CT. R. pt. 6 § 1 (1997).

**5.** DR 3–101 states:

Aiding Unauthorized Practice of Law
A lawyer shall not aid a nonlawyer in the unauthorized practice of law.
A lawyer, law firm or professional corporation shall not employ in any capacity a lawyer whose license has been suspended or revoked for professional misconduct, during such period of suspension or revocation, if the disciplined lawyer was associated with such lawyer, law firm or professional corporation at any time on or after the date of the acts which resulted in suspension or revocation.
A lawyer, law firm or professional corporation employing a lawyer as a consultant, law clerk or legal assistant when that lawyer's license is suspended or revoked for professional misconduct shall not represent any client represented by the disciplined lawyer or by any lawyer with whom the disciplined lawyer practiced on or

after the date of the acts which resulted in suspension or revocation.
Virginia Code of Professional Responsibility DR 3–101 (1997).
DR 3–104 further provides:
A lawyer or law firm may employ nonlawyer personnel to perform delegated functions under the direct supervision of a licensed attorney, but shall not permit such nonlawyer personnel to:
Counsel clients about legal matters;
Appear as counsel in court or in proceedings which are part of the judicial process; or
Engage in the unauthorized practice of law.
A lawyer or law firm that employs nonlawyer personnel shall not permit any representation that such nonlawyer is a lawyer.
A lawyer or law firm that employs nonlawyer personnel shall exercise a high standard of care to assure compliance by the nonlawyer personnel with the applicable provisions of the Code of Professional Responsibility. The initial and the continuing relationship with the client must be the responsibility of the employing attorney.
The delegated work of nonlawyer personnel shall be such that it will assist only the employing attorney will be merged into the lawyer's completed product. The lawyer shall examine and be responsible for all work delegated to nonlawyer personnel.
The lawyer or law firm that employs nonlawyer personnel shall not permit such nonlawyer to communicate with clients or the public, including lawyers outside his firm, without first disclosing his nonlawyer status.
Virginia Code of Professional Responsibility DR 3–104 (1997). Virginia Code § 54.1–3904 charges one guilty of practicing law without au-

The unauthorized practice of law stems from the direct and personal relationship between attorney and client. It has been defined as the furnishing of advice under circumstances, which imply the use of legal skill and knowledge. VA. SUP.CT. R. pt. 6 § 1 (1997). The gravity of the consequences resulting from abuses of this relationship requires this Court to scrutinize the procedures such as those employed by Dubow, Owen and the Clinic.

Dubow discussed the differences between bankruptcy chapters with debtors,[6] went over the procedure for filing bankruptcy, reviewed debtors' applications,[7] helped in the valuation of items for debtors' schedules,[8] counseled on exemptions,[9] advised debtors on the treatment of student loans,[10] and discussed the effect of reaffirmation of debts.[11] At every critical juncture in these bankruptcy cases, Dubow was the only person advising debtors.

■ Dubow testified that the Clinic used a computer program to generate debtors' petitions based on information provided by debtors and Owen. He also claimed to have served only as a liaison between debtors and Owen when relaying answers to substantive legal questions.[12] These actions within themselves fall within the purview of acceptable

nonlawyer behavior.[13] *See, e.g.,* Virginia Comm. on Legal Ethics and the Unauthorized Practice of Law, Comm. Op. 73 (1996).

However, the role Dubow played in counseling debtors, regardless of where he received his information, crosses the line drawn by the rule of law. Dubow placed himself in the improper position of having to determine what constituted legal and administrative information when meeting with prospective clients. *See, e.g., State Unauthorized Practice of Law Committee v. Paul Mason & Assoc., Inc.,* 46 F.3d 469, 471 (5th Cir.1995). A court should not permit such acts, nor should it encourage the appearance of such impropriety. Dubow, a formerly licensed attorney, and Owen as an attorney, are charged with this knowledge.

■ Additionally, an attorney shall not practice law in association with a nonlawyer or otherwise share legal fees. VIRGINIA CODE OF PROFESSIONAL RESPONSIBILITY DR 3–102 (1997); Ethical Consideration 3–8, VA Sup. Ct. R. pt. 6 § 2 (1997); *see also* 11 U.S.C. § 504. In light of Dubow's track record, Owen should have taken steps to ensure that he was not meeting alone with debtors and not advising them on legal issues.[14] As a Virginia licensed attorney, Owen bore the

thority with a Class 1 misdemeanor. Va.Code Ann. § 54.1–3904 (Michie 1997).

6. Smith stated at hearing that Dubow spoke with her about filing under Chapter 13 as a means to keep her house. Soulisak also recalled discussing the different chapters with Dubow.

7. When asked how she came up with the $5 amount for item #2 on her Schedule B, Finegold testified that Dubow advised her to "run down" her checking account as low as possible, as she did not "want any money in there."

8. Finegold testified that Dubow advised her to use pawn shop value in valuing items of personal property in her Schedule C.

9. Dubow told Finegold that her question concerning her retirement plan "had been researched" and that it was ERISA qualified. Finegold, Soulisak and Bennett testified that Dubow spoke with them generally about the exemptions on their Schedule C.

10. At hearing, Soulisak stated that Dubow informed him about the nondischargeability of his student loan with Sally Mae. Smith testified in a

previous deposition that she had a similar conversation about student loans with Dubow.

11. Bennett stated that when she expressed a desire to keep her 1997 Pontiac Sunfire, Dubow discussed reaffirmation of this debt with her.

12. The record reflects that on several occasions Owen billed time for phone calls with debtors that debtors never received. The Clinic also appears to have attributed time to attorneys who had already left its employ. For instance, Daniel Roth, Esq. did not recall preparing Smith's petition, schedules or plan, yet time records reflect that he completed this work several days after his resignation. The fact remains that Dubow was the only person in continuous contact with debtors.

13. Likewise, it does not matter whether debtors knew Dubow acted only as their financial counselor and not as an attorney.

14. Throughout these proceedings, Owen emphasized the fact that debtors were satisfied with her legal representation. However, debtors' satisfaction is of no consequence as to the issues at bar.

burden of protecting the integrity of the judicial system.

■ Dubow and Owen's "professional agreement" on the division of fees constitutes improper fee sharing prohibited by the Virginia and Bankruptcy Codes.[15] *See* 11 U.S.C. § 504; VIRGINIA CODE OF PROFESSIONAL RESPONSIBILITY DR 3–102 (1997). Their practice of not strictly monitoring the payment of fees and periodically "settling up" further blurs the lines between attorney and financial counselor.[16]

■ Absent compliance with the law, no professional has an absolute right to their fees. *Anderson v. Anderson (In re Anderson),* 936 F.2d 199, 204 (5th Cir.1991). A bankruptcy court is given wide latitude in fashioning an appropriate sanction for unethical behavior, including the disgorgement of fees. *Arens v. Boughton (In re Prudhomme),* 43 F.3d 1000, 1004 (5th Cir.1995); *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 574 (Bankr.N.D.Tex.1986). Courts have

ordered the disgorgement of fees to deny the one engaged in unethical behavior the fruits of illegal and improper actions. *In re Kaitangian,* 218 B.R. 102, 115 (Bankr.S.D.Cal. 1998); *In re Gavin,* 181 B.R. 814, 821 (Bankr.E.D.Pa.1995). Specifically, courts have ordered disgorgement in conjunction with the unauthorized practice of law. *In re Bright,* 171 B.R. 799, 806 (Bankr.E.D.Mich. 1994); *United States Trustee v. Kasuba (In re Harris),* 152 B.R. 440, 447 (Bankr.W.D.Pa. 1993); *In re Martin,* 40 B.R. 695, 700 (Bankr.N.D.Ga.1984); *In re Anderson,* 79 B.R. 482, 486 (Bankr.S.D.Cal.1987).

■ In addition to state law sanctions, Bankruptcy Code § 329 permits unethical conduct to serve as a factor considered in analyzing the reasonableness of legal fees paid by a debtor.[17] *In re Devers,* 12 B.R. 140 (D.D.C.1981); 3 Collier on Bankruptcy § 329.04[1][b], p. 329–17; *In re McNar,* 116 B.R. 746 (Bankr.S.D.Cal.1990), *aff'd in part,* 133 B.R. 561 (9th Cir. BAP 1991). This

---

**15.** Dubow and Owen's arrangement was to charge clients $650, where $400 went to Owen for legal services rendered and $250 to the Clinic for paralegal, clerical and operating expenses. Owen received a minimum of $150 for attending debtors' § 341 meeting. 11 U.S.C. § 504 provides:

> Except as provided in subsection (b) if this section, a person receiving compensation or reimbursement under section 503(b)(2) · or 503(b)(4) of this title may not share or agree to share—
> (a)(1) any such compensation or reimbursement with another person; or
> (2) any compensation or reimbursement received by another person under such sections.
> (b)(1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.
> 11 U.S.C. 504(a)(1), (2) & (b)(1).

Neither exception to this prohibition permits fee sharing with a nonlawyer professional. 1 COLLIER ON BANKRUPTCY ¶ 8.06[2][b], p. 8–58 (Lawrence P. King et al. eds., 15th ed. 1997).

**16.** When asked in the Finegold proceedings about how Owen and the Clinic received payment for services rendered, Dubow claimed he did not know. Owen further stated that her

arrangement with Dubow varied from case to case and she also was not sure how compensation took place. In order to save on paperwork, Owen said she would tell Dubow, "just hold onto that and I'll just take this amount of money." During the Soulisak hearing, the Court further questioned Dubow about the distribution of fees. When the trustee presented Dubow with checking statements, Dubow still could not figure out the amounts paid to Owen, even though only Dubow and his brother in England could sign checks for the Clinic. Owen stated:

> "Alan, many times when you received fees but they were lumped into one payment, is it not true I agreed to accept payment by saying, 'well, out of my fee, just keep your paralegal time'?"

Dubow assented.

**17.** 11 U.S.C. § 329(a) requires attorneys to file a statement of compensation. This subsection states:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
> 11 U.S.C. § 329(a).

section applies to all persons who render legal services to a debtor in a bankruptcy case or in connection with such a case.[18] *In re Evans*, No. 93–10237–AT, 1995 WL 506839, *2 (Bankr.E.D.Va.) (Tice, J.). In the cases at bar, we find the unethical conduct of Dubow and Owen to be so egregious as to make any collection of fees unreasonable.

For the foregoing reasons, we order Alan Dubow, Margo Bly Owen, Esq. and the Debt Clinic, Inc. to disgorge all fees received in connection with the above four cases pursuant to § 329.

---

**18.** Aside from this Court's ability to take ethical issues in consideration with the reasonableness of fees pursuant to § 329, Va. Sup.Ct. R. pt. 6 § 1 (1997) states that any fees charged by a person engaged in the unauthorized practice of law are not collectible in court.