In re SULLIVAN'S JEWELRY, INC., Debtor.

Leslie A. DAVIS, Trustee, Plaintiff–Appellee,

v.

Roger M. HIBBITS, Defendant–Appellant.

BAP No. 98–6013EM.

United States Bankruptcy Appellate Panel of the Eighth Circuit.

Submitted September 25, 1998.

Decided November 16, 1998.

Roger M. Hibbits, St. Louis, MO, for appellant.

Wendi Alper–Pressman, Timothy P. Philipp, Vincent D. Vogler, St. Louis, MO, for appellee.

Before KRESSEL, SCOTT, and DREHER, Bankruptcy Judges.

DREHER, Bankruptcy Judge.

This is an appeal from an order of the bankruptcy court[1] which granted summary judgment in favor of Plaintiff, Leslie A. Davis,[2] Chapter 7 trustee (trustee) for Debtor, Sullivan Jewelry, Inc. (debtor). At issue is whether Defendant, Roger M. Hibbits (Hibbits), must return to the estate attorneys' fees paid to him by the debtor for services rendered between the date an involuntary petition for relief was filed against the debtor and the date the order for relief was entered (the involuntary gap period). The material facts are simple, straightforward and undisputed.

## FACTS

On October 2, 1990, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against debtor. On February 19, 1991, the case was converted to Chapter 11 and an order for relief was entered. A trustee was appointed on March 26, 1991. On May 2, 1991, on the trustee's motion, the case was converted to one under Chapter 7.

The debtor filed no application to retain, and the court issued no order approving the retention of Hibbits as counsel for the debtor.[3] Nevertheless, during the involuntary gap period, Hibbits purported to act as counsel for the debtor. During this same time period he received payments for such services from the debtor. Each check was signed by William Sullivan, President and sole shareholder of debtor, and was in payment for legal services rendered during the involuntary gap period.

After being appointed, the Chapter 7 trustee filed this adversary proceeding. He

1. The Honorable James J. Barta, Chief United States Bankruptcy Judge for the Eastern District of Missouri.

2. A. Thomas DeWoskin was originally the Chapter 7 trustee. On August 25, 1995, Plaintiff, Leslie A. Davis, was appointed successor trustee.

3. On May 1, 1991, Hibbits, purporting to act as attorney for the debtor, filed a document captioned "Debtor's Opposition to Motion to Convert Filed By Trustee" in which he requested that the bankruptcy court appoint him as attorney for the debtor. This document was not signed by the debtor, did not include any supporting documents, and was not authorized by the trustee.

sought return of the payments debtor had made to Hibbits on two alternative grounds. First, he sought turnover of the payments under §§ 329(b) and 542 of the Bankruptcy Code. Alternatively, he sought to avoid the payments, alleging that they were unauthorized postpetition transfers under § 549 of the Code. The trustee moved for summary judgment. In response Hibbits filed an "application" for attorneys fees in an amount exceeding the amounts sought by the trustee. The application was not fact specific, contained only a general narrative of the services performed, and did not contain a description of the nature of the services or a listing of the time spent with respect to specific activities.

The bankruptcy court granted the trustee's motion.[4] In a lengthy and detailed memorandum the court found that Hibbits had performed no services during the involuntary gap period that were of value to the estate. Rather, the court found Hibbits had actually represented the interests of Sullivan and was in a conflicted situation throughout. The bankruptcy court ruled that services performed by counsel during the involuntary gap period are governed by § 329(b), which allows a court to order return of fees to the extent compensation exceeds the reasonable value of the services rendered to the estate. The court further ruled that payments received by Hibbits were subject to avoidance under § 549 of the Bankruptcy Code. Under these two alternatives theories, the court awarded judgment for the trustee requiring Hibbits to return the $6,400.00 in payments that had been made to him.

The bankruptcy court, properly, did not consider this a formal application by the debtor to retain Hibbits as its counsel and entered no order with respect to the request.

4. Originally the bankruptcy court ruled from the bench and granted the trustee's motion. Hibbits then filed additional pleadings and exhibits including a "Notice of Appeal" which the bankruptcy court construed as a motion for reconsideration. The court then reexamined the entire record and subsequently issued a lengthy memorandum which addressed Hibbits' contentions in detail.

## DECISION

The decision of the bankruptcy court will be affirmed. We do so on the first alternative ground upon which the bankruptcy court rested its decision. Therefore, we need not reach the second.[5]

Payments to professionals in bankruptcy cases are governed by a series of interrelated statutory provisions of the Bankruptcy Code. Section 327 of the Code provides that a trustee may hire a professional only with leave of the court. 11 U.S.C. § 327 (1994). The court may approve such retention only if the professional does not "hold or represent an interest adverse to the estate" and is "disinterested." *Id.* As an enforcement mechanism, § 328(c) of the Code further provides that a court may deny compensation to professional persons employed under § 327 "if, at any time during such professional person's employment under § 327 ... of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c). Section 330 of the Code further provides that professionals may be compensated only after an application is made to the bankruptcy court. 11 U.S.C. § 330(a). Under § 330(a)(1)(A), the court may award only "reasonable compensation for actual, necessary services rendered" by the professional. Section 330(a)(3)(A)-(E) provides a nonexclusive list of factors to be considered in making a determination of what is "reasonable." 11 U.S.C. § 330(a)(3)(A)-(3).

■ The fees involved here, however, were for services rendered during, and were in fact paid to Hibbits during, the involuntary gap period. "By their terms ... §§ 327 and 328 apply only to professionals employed by a trustee and [they] are not applicable to conflicts occurring prior to the order for

relief...." *In re Wiredyne, Inc.*, 3 F.3d 1125, 1127 (7th Cir.1993). The authorities are uniform in holding that professional fees paid or owed for services performed before the entry of an order for relief are governed, not by §§ 327 and 328, but by § 329 of the Code. *Id.; see also, e.g., In re McNar, Inc.*, 116 B.R. 746, 749 (Bankr.S.D.Cal.1990).

Section 329 governs all attorneys who, within one year preceding the filing of a bankruptcy petition, provide legal services in contemplation of or in connection with the bankruptcy case. All such attorneys must file a statement complying with Federal Rule of Bankruptcy Procedure 2015 disclosing the compensation received. If such compensation "exceeds the reasonable value of any such services," the bankruptcy court may order its return. 11 U.S.C. § 329(a), (b); *Mahendra*, 131 F.3d at 757 ("Section 329 requires the attorney to show that the agreed compensation for the legal services was reasonable."); *Wiredyne*, 3 F.3d at 1127.

The bankruptcy court found that Hibbits was not "disinterested" because during the case he actually represented Sullivan, and perhaps other principals in the company, personally. It further concluded that the value of Hibbits' services to the estate was zero. Hibbits challenged this finding stating that he had devoted more than 100 hours of time "rendering services [that] are reasonably worth in excess of the sum of $12,500." But, he failed to support that statement with any detail that would allow a court to determine what types of services had been rendered and which, if any, services actually benefitted the estate.

It is undisputed that during the case Hibbits signed pleadings in which he described himself as counsel for Sullivan. Also, many of the activities undertaken, such as opposition to the entry of the order for relief, were

5. Although Hibbits is an attorney, his brief would hardly suggest it. He appeals from an order requiring the return of the payments he received but he says virtually nothing about this in his brief. Instead, he continues to urge, almost exclusively, that the appeal should be transferred to the United States District Court. That argument was rejected in an earlier decision of this court dated February 23, 1998. Additionally, he continues to complain that additional Appellants should be allowed to join in this appeal. *That* complaint was rejected in another decision of this court dated May 11, 1998. The trustee has argued that Hibbits' briefing is *so* deficient that we should ignore it altogether. While in another decision, this court rejected Appellee's motion to strike Hibbits' brief for blatant procedural deficiencies, we do note that Hibbits has failed to brief any substantive issue on even the most cursory basis.

counterproductive. Based on the record in the case, the bankruptcy court concluded that "the record has shown that the benefactors of the Defendant's legal services were the Debtor's insiders, and that no value or benefit resulted to the Bankruptcy estate or to the Debtor during the gap period such that compensation may be allowed from assets of the Bankruptcy estate." This finding was not clearly erroneous.

■ The decision to reduce fees under § 329 is within the sound discretion of the bankruptcy court. *Grunewaldt v. Mutual Life Ins. Co. (In re Coones Ranch)*, 7 F.3d 740, 744 (8th Cir.1993); *Agate Holdings, Inc. v. Ceresota Mill Ltd. Partnership (In re Ceresota Mill Ltd. Partnership)*, 211 B.R. 315, 316 (8th Cir. BAP 1997); *see also Pruss v. Pelofsky (In re Sauer)*, 222 B.R. 604, 608 (8th Cir. BAP 1998). The bankruptcy court did not abuse its discretion in denying all fees to Hibbits. It properly considered the fact that Hibbits had placed himself in a position of a conflict of interest when it found that the services rendered were of no value to the estate or the debtor. *Wiredyne*, 3 F.3d at 1127 ("The existence of a conflict of interest is certainly a relevant factor in this analysis and is a justifiable reason to reduce or require disgorgement of attorneys fees...."). Hibbits does not attempt to explain his dual representation. Instead, he argues, obliquely and without citation to a record, that the bankruptcy court should not have allowed him to continue appearing if his fees would later be questioned. To the contrary, the Code places no such obligation on the court.

The bankruptcy court did not abuse its discretion in reducing Hibbits' fees from $6,400.00 to zero.

ACCORDINGLY, the decision of the bankruptcy court is AFFIRMED.