**In the Matter of WIREDYNE, INC., Debtor.**

**Appeal of Tamalou WILLIAMS, Trustee, Appellant.**

**No. 92–1518.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1992.

Decided Aug. 30, 1993.

Terry Sharp, argued, Marcus H. Herbert, Mt. Vernon, IL, for appellant.

Peter D. Kerth, argued, Thomas M. Newmark, Gallop, Johnson & Neuman, St. Louis, MO, Francis E. Pennington, III, Gerald P. Greiman, Green, Hoffmann & Dankenbring, St. Louis, MO, for appellees.

Before CUDAHY and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

This action for disgorgement of attorneys' fees arose from a bankruptcy proceeding involving the debtor corporation, Wiredyne, Inc. The bankruptcy Trustee alleges that the debtor's law firm had a conflict of interest when it represented both Wiredyne and its insiders in two lawsuits prior to the order for relief in bankruptcy. The issue in this appeal is whether a conflict of interest prior to the order for relief mandates the disgorgement of attorneys' fees under the Bankruptcy Code. The bankruptcy court held that disgorgement was not required because no actual conflict of interest arose and the services at issue were highly beneficial to the estate, and the district court affirmed. We have jurisdiction pursuant to 28 U.S.C. § 158(d). We affirm.

I.

In August 1988, in order to combat its worsening financial condition, Wiredyne sought the advice of the defendant law firm, Green, Hoffmann & Dankenbring (GHD), and Cambridge Consulting Group (Cambridge), a business broker. After reviewing all of the options, the Wiredyne management determined that it would be in the best interests of the company to sell Wiredyne as a going concern. For approximately two years, Wiredyne, with the assistance of GHD and Cambridge, attempted to arrange for its sale, but its efforts were hampered by two lawsuits initiated against the corporation and its insiders. The first was a foreclosure ac-

tion brought by the Bank of New England (BNE) in November, 1988. BNE was Wiredyne's principal creditor, and held personal guarantees of Wiredyne's indebtedness from the company's directors and principal shareholders (the Mallanik defendants).[1] The defendant law firm entered an appearance and filed an answer on behalf of both the company and the Mallanik defendants. Pursuant to a standstill agreement, the litigation was put on hold until after Wiredyne's assets were sold, at which time BNE dismissed the suit.

The second lawsuit was an action by Cambridge in January, 1989, against Wiredyne, the Mallanik defendants and others, alleging a breach of its brokerage agreement. Since Wiredyne was in the midst of negotiating a sale of its assets, Cambridge moved for a preliminary injunction, hoping to enjoin Wiredyne's pending sale. As in the BNE lawsuit, the defendant law firm represented both Wiredyne and the Mallanik defendants. Cambridge's motion was subsequently denied, and it voluntarily dismissed the suit. Nonetheless, the sale that had been pending was never consummated, and Wiredyne continued to search for a purchaser.

On March 3, 1989, an involuntary bankruptcy petition was filed against Wiredyne. Since Wiredyne was in the process of carrying out a sale of its assets and business to the International Staple and Machine Company and wished to maintain its value as a going concern, GHD (acting on Wiredyne's behalf) resisted the bankruptcy petition. On August 23, 1989, the bankruptcy court entered an order for relief and, two weeks later, Wiredyne voluntarily converted the proceeding from chapter 7 to chapter 11 in order to facilitate the sale of its assets to a subsidiary of International Staple. Unfortunately, the sale price was less than the amount that Wiredyne still owed BNE, and thus nothing was left for Wiredyne's unsecured creditors.

In March, 1990, the Unsecured Creditors' Committee filed a complaint to compel return of funds, and the Trustee, Tamalou Williams,

was later substituted as plaintiff. The complaint consisted of two counts. Count I of the complaint was against GHD, alleging that the law firm's representation of both Wiredyne and the Mallanik defendants in the law suits instigated by BNE and Cambridge constituted a conflict of interest and that the firm's attempts to sell Wiredyne were solely for the purpose of reducing the Mallanik defendants' personal obligations as guarantors. Thus, the Trustee argued that the $93,000 in attorneys' fees that Wiredyne paid to GHD prior to the order for relief should be returned to Wiredyne's estate. Count II was against the Mallanik defendants, alleging that GHD's work benefitted only the corporate insiders, and the company should therefore not be responsible for the attorneys' fees.

The bankruptcy court conducted a trial of the Trustee's claims, and granted judgment in favor of the defendants. It held that while the potential for a conflict of interest may have existed, no actual conflict ever arose because the interests of Wiredyne and the Mallanik defendants were congruent when they were represented by GHD. The court further found that the allegations of impropriety with respect to the motives underlying Wiredyne's sale were unfounded, since the sale was in Wiredyne's best interests.

On appeal, the district court affirmed. It held that a court's decision to deny or reduce attorneys' fees in the face of a conflict of interest was a matter of discretion under section 329 of the Bankruptcy Code. The court also concluded that the Mallanik defendants were not individually liable for attorneys' fees simply because they received some benefit from GHD's services.

## II.

■ We review a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *In re Rivinius, Inc.*, 977 F.2d 1171, 1175 (7th Cir.1992). The Trustee argues, first, that the bankruptcy court's distinction between an actual conflict of interest

---

1. Allan R. Mallanik, Margaret J. Mallanik, Glenn A. Mallanik, Theresa A. Mallanik, Emily M. Jackson and Donald Jackson.

and a potential conflict is at odds with cases holding that even the appearance of divided loyalties is a conflict of interest as to which the court abuses its discretion by allowing attorneys' fees. The Trustee relies on cases such as *In re Grabill Corp.*, 113 B.R. 966, 970 (Bankr.N.D.Ill.1990), *aff'd on other grounds*, 135 B.R. 835 (N.D.Ill.1991), *aff'd on other grounds*, 983 F.2d 773 (7th Cir.1993), which reject as a "contradiction in terms" the notion of potential conflicts, and indicate that attorneys representing interests adverse to those of the estate must forfeit their fees. In the alternative, the Trustee contends that the Mallanik defendants are responsible for that portion of the attorneys' fees paid to GHD relating to services benefitting only the Mallanik defendants.

The flaw in the Trustee's first argument is that the cases on which it relies involve the forfeiture of fees under sections 327 and 328 of the Code. Section 327 permits the trustee, with the court's approval, to employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Section 328 provides that a court may deny compensation to professional persons employed under section 327 (or section 1103, which permits committees appointed by the trustee to employ attorneys, accountants or other agents) "if, at any time during such professional person's employment under 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c). The impartiality requirement of sections 327 and 328 has been interpreted strictly, and a number of courts have

held that the distinction between an actual conflict of interest and a potential conflict of interest is artificial. *E.g. In re Grabill*, 113 B.R. at 970; *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742 (Bankr.N.D.Tex.1988). And although the language of section 328 appears to grant courts discretion in denying compensation because of a conflict of interest, courts have generally denied fees as a matter of course under sections 327 and 328 in the event of a conflict. *See, e.g., In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984). By their terms, however, sections 327 and 328 apply only to professionals employed by a trustee [2] and are not applicable to conflicts occurring prior to the order for relief, after which time court approval is required for employment of counsel.[3] *In re McNar, Inc.*, 116 B.R. 746, 753–54 (Bankr. S.D.Cal.1990); *In re Grabill*, 113 B.R. at 975.

On the other hand, in order to challenge the attorneys' fees paid, or owed, for services performed prior to the order for relief, one must rely on section 329 of the Code. This section permits courts to modify unreasonable or excessive fees.[4] *In re Grabill*, a case on which both parties rely, helps illustrate the distinction. In that case, a law firm's application for employment following the order for relief was denied because of a conflict of interest. The firm then applied for attorneys' fees for services rendered first before and then after the entry of the order for relief. The creditors objected to the fee application, arguing that the firm was not entitled to its fees because of the conflict of interest. The bankruptcy court held, first, that the firm was not entitled to fees for services performed *after* the order for relief, concluding that the denial of the order of

---

**2.** Section 1107 of the Code also grants a debtor in possession the rights and powers of a trustee in bankruptcy, and thus makes sections 327 and 328 applicable to professionals employed by a debtor in possession. 2 Lawrence P. King, Collier on Bankruptcy ¶ 327.01 n. 1 (15th ed. 1985).

**3.** Sections 327 and 328 may be applicable prior to the order for relief in those rare situations in which an interim trustee is appointed prior to the order for relief and the trustee employs a professional under section 327. Of course, that was not the case here.

**4.** Section 329 provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, ... shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition....

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive....

11 U.S.C. § 329(a) & (b).

employment was justified based on the strict impartiality standard of sections 327 and 328. *In re Grabill,* 113 B.R. at 969–70. As to fees for services performed before entry of the order for relief, however, the court held that the reasonableness standard of section 329 applied. The court concluded that the fees accumulated pre-petition and during the "gap period"—the period between the filing of an involuntary bankruptcy petition and the order for relief—were reasonable and not excessive and, thus, were not to be disgorged. *Id.* at 974.

■ The disgorgement of fees accumulated prior to the order for relief therefore is governed by section 329. The standard applied under sections 327 and 328 is inapposite. In determining whether attorneys' fees are unreasonable or excessive under section 329, courts are guided by section 330 of the Code dealing with compensation of officers. *In re Vann,* 136 B.R. 863, 868 (D.Colo.1992), *aff'd without opinion,* 986 F.2d 1431 (10th Cir.1993). Section 330 provides that a reasonable compensation for services rendered by an attorney is "based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title...." 11 U.S.C. § 330. The existence of a conflict of interest is certainly a relevant factor in this analysis and is a justifiable reason to reduce or require disgorgement of attorneys' fees, but reduction or disgorgement is not mandatory. *In re McNar,* 116 B.R. at 753. The decision to reduce fees under section 329 is within the sound discretion of the bankruptcy court, which should weigh the equities of the case in determining whether the fees are unreasonable or excessive. *Id.* at 753–54.

■ In the present case, the bankruptcy court held that the fees were reasonable because there was no conflict of interest: the interests of the firm and the Mallanik defendants were congruent during the joint representation. The bankruptcy court also found that the sale of Wiredyne as a going concern was in the best interest of all of the company's creditors and that GHD's services were "highly beneficial to the Estate." The court therefore rejected the Trustee's argument that the fees were excessive and refused to reduce or require disgorgement of the fees paid to the firm. These findings are not clearly erroneous and the court did not abuse its discretion by its refusal to order return of the fees paid to the firm.

Finally, we note that the Trustee's alternative argument, that the Mallanik defendants are responsible for a portion of the fees paid by Wiredyne, has been recast at each stage of litigation. In the bankruptcy court, the Trustee argued that the court should order return of all of the fees paid to GHD or that the Mallaniks should pay all the legal fees. In the district court, the Trustee argued that, if the interests of Wiredyne and the Mallanik defendants were indeed congruent, the Mallaniks should be required to contribute their share of the fees. Now, the Trustee has shifted gears once again and argues that certain fees were paid to GHD solely for the benefit of the Mallaniks, and that these fees should therefore be paid by the Mallanik defendants alone. Because the Trustee did not raise this particular argument in the trial court,[5] where an evidentiary record of the services performed specifically for the Mallanik defendants could have been developed, the argument has been waived. *In re Excello Press, Inc.,* 890 F.2d 896, 900 n. 2 (7th Cir.1989).

### III.

Accordingly, the judgment of the district court, affirming the bankruptcy court's refusal to order disgorgement of, or reassess liability for, the challenged attorneys' fees, is

AFFIRMED.

---

5. Indeed, the district court noted that the claim now alleged here was not presented before that court:

   [T]he trustee has not argued that the fees paid to the law firm improperly included payment for these services performed solely on behalf of the individual defendants.... Thus, the issue of whether Wiredyne improperly paid for pleadings that were filed solely on behalf of the individual defendants is not before this Court. *In re Wiredyne, Inc.,* No. 90–C4284 Mem. op. at 12 n. 3, 1992 WL 540715 (S.D.Ill. Jan. 29, 1992).