## In re GRANITE SHEET METAL WORKS, INC., Debtor.

### Bankruptcy No. 92–50722.

United States Bankruptcy Court, S.D. Illinois.

Oct. 26, 1993.

Robert Eggmann, Edward M. Goldenhersh, Norman W. Pressman, Greensfelder, Hemker & Gale, St. Louis, MO, for Unsecured Creditors Committee.

Wm. J. Connelley, Chicago, IL, for IDFA.

Francis X. Buckley, Jr., Belleville, IL, for Magna Bank of Madison Co.

Jeffrey Roberts, Godfrey, IL, Paul Lauber, Edwardsville, IL, for debtor.

Steven Mottaz, Trustee, Alton, IL.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

The debtor, Granite Sheet Metal Works, Inc. (hereafter "debtor"), filed a chapter 11 petition on August 14, 1992. On August 31, 1992, the debtor filed a motion for leave to employ the law firm of Farrell & Long, P.C. to represent it as the debtor in possession. The debtor's motion, submitted by

Paul Lauber of the Farrell & Long, P.C. law firm, stated, in pertinent part, that "[t]hese attorneys do not hold or represent an interest adverse to the estate, are disinterested persons, and are qualified to represent and assist the Debtor in possession of [sic] carrying out its duties herein." The affidavit of attorney Lauber filed in support of the motion again asserted "[t]hat the attorneys of said law firm do not hold or represent any interest adverse to the estate, and are disinterested persons as to the estate." Neither the application nor the accompanying affidavit mentioned that the law firm had any pre-petition connections with the debtor. On September 9, 1992, the Court entered an order approving the debtor's employment of Farrell & Long, P.C. as its counsel.

Thereafter, on February 1, 1993, the Farrell Law Firm, P.C.[1] filed an application seeking attorney fees of $21,878.25 and reimbursement of costs of $1,010.56 for services performed between July 23, 1992, and January 25, 1993. Counsel asked that they be allowed to apply toward the fees and costs a retainer of $22,500.00 taken by the law firm from the debtor and held in the law firm's trust account. Creditors Illinois Development Finance Authority (hereafter "IDFA"), Insulation Installations[2] and the Official Unsecured Creditors Committee (hereafter "committee") filed objections to the application for attorney fees challenging their reasonableness and counsel's disinterestedness. Additionally, the committee filed a motion asking the Court to disqualify the Farrell Law Firm from representing the debtor and to order

counsel to disgorge the retainer held in its trust account. The application for fees, the objections to the application, and the motions seeking disqualification of debtor's counsel and disgorgement of the retainer are now before the Court.

The following facts are gleaned from the record before the court, from the examination of David Partney conducted pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (hereafter "Rule 2004 examination"), from undisputed arguments of counsel and from the record of adversary case no. 93–5006, of which the Court takes judicial notice.

Prior to August 12, 1991, the Partney brothers, David, Donald and Daniel, each owned 140 shares, or one-third, of the outstanding stock of the debtor and were directors of the debtor. Acting pursuant to their authority as directors, the Partney brothers approved the debtor's redemption of all of the shares of stock belonging to Donald and Daniel Partney, leaving David Partney as the president and sole shareholder of the debtor. The redemption of the stock took place on August 12, 1991, when Donald and Daniel Partney each executed separate "Redemption Agreement[s]" with David Partney[3] and the debtor.

According to the terms of the "Redemption Agreement[s]," the debtor transferred assets having a value of at least $410,000 to each of Donald and Daniel Partney in exchange for the 140 shares of stock held by each of them.[4] Of the assets trans-

---

1. The Farrell Law Firm, P.C. is the successor firm to Farrell & Long, P.C. Hereafter, all references shall, for sake of convenience, be to the Farrell Law Firm.

2. Insulation Installations' objection challenged the fees on equitable grounds. This creditor was not notified of the hearing on the fee application. However, the Court has considered the creditor's objection and finds that the creditor has suffered no prejudice as a result of the lack of notification.

3. David Partney was a signatory to the "Redemption Agreement[s]" and became a guarantor of the corporate debt to his brothers as a result of the transaction.

4. The committee states that the actual value of the assets transferred to Donald Partney totaled $628,435 and the value of the assets transferred to Daniel Partney totaled $665,870. The discrepancy between the committee's figures and those set forth in the "Redemption Agreement[s]" result from the facts that life insurance policies valued at $19,481.74 and $67,136.43 respectively on the debtor's Statement of Financial Affairs are assigned no value in the "Redemption Agreement[s]," that a Town Car automobile transferred to Daniel Partney is assigned no value in the "Redemption Agreement," that a Mercury automobile transferred to Donald Partney and valued at $8,114.64 on the debtor's Statement of Financial Affairs is not mentioned in the "Redemption Agreement," and that the

ferred to Donald Partney, $170,000 consisted of the debtor's execution of two promissory notes in favor of Donald totaling this amount. The assets transferred to Daniel Partney included a promissory note in the amount of $192,000 executed by the debtor in favor of Daniel. Repayment of the notes was guaranteed by David Partney personally and secured by certain of his personal assets.

Simultaneously with the stock redemption transaction, the debtor agreed to forgive a debt of $142,210.91 owed to it by Donald and a debt of $224,964.42 owed to it by Daniel in exchange for each brother's promise to refrain from competing with the debtor's business. At the time the debtor entered into the transactions described above, its net book value was $856,910.

The committee and IDFA argue that the Farrell Law Firm represented both the debtor and David Partney during the stock redemption transaction. Counsel for the debtor argues that it represented only the debtor—and not David Partney—during the stock redemption transaction. David Partney testified at his Rule 2004 examination as follows:

> Question: Were you represented in a deal in the redemption transaction? Were you personally represented?
>
> Answer: Yes. I had the firm of Farrell & Long. Jeff Roberts with Farrell & Long represented me.
>
> Question: So he represented the company and he represented you?
>
> Answer: Well, yes. But it was basically a company redeeming their stock, but I was the tool behind it.

(Tr. at 22.) Apart from the Farrell Law Firm, David Partney did not retain counsel

to represent his interests during the stock redemption transaction.[5]

On August 14, 1992, exactly one year and two days after the stock redemption transaction and non-competition agreements were consummated, the debtor, represented by the Farrell Law Firm, filed a petition to reorganize under chapter 11 of the Bankruptcy Code. On Schedule D of the debtor's bankruptcy schedules, the debtor indicated, *inter alia*, that David Partney was a co-debtor with the debtor on a secured obligation to Mark Twain Bank of Edwardsville in the amount of $123,706.50 and on a secured obligation to Magna Bank of Madison County in the amount of $379,713.21. Additionally, Schedule B indicated that David Partney was obligated to the debtor in the amount of $307,355.30 for loans made to him by the debtor.

Soon after the bankruptcy filing, and after the debtor's application to employ the Farrell Law Firm had been approved by the Court, the debtor's counsel and counsel for the committee had a meeting on September 17, 1992, at which the committee's concern about the stock redemption transaction was one of the key points. Following this meeting, neither counsel advised the Court that concerns about the Farrell Law Firm's qualifications had been raised.[6]

Thereafter, although asked by the committee to do so, the debtor took no action to recover any of the assets transferred to Donald and Daniel Partney pursuant to the terms of the "Redemption Agreement[s]" or to collect from Donald and Daniel the debts forgiven pursuant to the terms of the non-competition agreements. At his Rule 2004 examination, David Partney testified as follows when questioned about the recovery of payments made to his brothers

---

debtor's forgiveness of debt of $142,210.91 and $224,964.42 owed by Donald and Daniel, respectively, is not accounted for in the "Redemption Agreement[s]."

**5.** During the bankruptcy proceeding, the law firm of Heyl, Royster, Voelker & Allen appeared on behalf of David Partney at his Rule 2004 examination and entered its appearance in his

defense in the adversary case brought by the committee.

**6.** IDFA was also aware of the stock redemption transaction at this time, having been one of the creditors who extended credit to the debtor in order to effect the transaction. IDFA did not notify the Court at this time of its concerns about the Farrell Law Firm's representation of the debtor.

under the terms of the notes given them during the stock redemption transaction:[7]

> Question: Still make your brothers payments?

> Answer: Still make the lending institutions and my brothers' payments. See, I feel like I—I felt like I had put up some things as collateral to them, and they had my word. And I went on and made my first payments to everybody because I considered them the same as secured creditors. That's when I got my hand smacked, and I didn't really know I was doing anything wrong. And I went on and paid them because hey, they got notes from me. I'm in trouble if I don't.

> Question: *Have you asked them for the money back?*

> Answer: *No. I wouldn't. I made them a promise that that is what I paid them, and I feel bad that I can't pay them.* I feel bad I can't pay Illinois Bank because I have a signed note with them, and the same with Mark Twain....

(Tr. at 33) (emphasis added). As a result of the debtor's inaction, the committee sought and received authority from the Court to prosecute potential claims of the debtor against insiders.

On November 13, 1992, the committee and IDFA filed a joint motion to reduce David Partney's salary as president of the debtor from $139,600 annually to $75,000 annually.[8] The debtor opposed the motion, contending that a reduction of this amount would force David Partney into personal bankruptcy, which would in turn harm the debtor's reputation and its ability to generate business. When one of David Partney's largest personal creditors then agreed to a reduction in its monthly debt service payments from David Partney, the debtor agreed on January 4, 1993, that David Partney's salary would be reduced to $110,000 annually with further review after sixty days.

In late January 1993, the debtor filed its first plan of reorganization. The plan proposed, *inter alia,* that David Partney's salary of $110,000 annually would be increased to $130,000 annually at the end of one year after the date of confirmation if debtor had met its projections and made all payments described in the plan and disclosure statement. The plan also provided that after such time as David Partney's salary was increased to $130,000 annually, David Partney would be required to pay the sum of $20,000 annually to the debtor as interest-only payments on the debt in excess of $300,000 owed by him to the debtor. The debtor's plan of reorganization was never confirmed.

On February 22, 1993, the committee filed adversary case no. 93–5006 against the three Partney brothers seeking recovery of the assets transferred to Donald and Daniel during the stock redemption transaction, collection of Donald's and Daniel's forgiven debts, and collection of the debt of $307,355.30 owed by David to the debtor.

On April 14, 1993, the debtor's bankruptcy case was converted to a case under chapter 7 of the Bankruptcy Code on the committee's motion. Upon the conversion of the case, the committee's adversary complaint was dismissed without prejudice, with any further prosecution to be determined by the chapter 7 trustee.

In ruling on the matters before it, the Court will examine first the question of whether the Farrell Law Firm is qualified to be employed as debtor's counsel. If the Court finds the law firm to be disqualified, it need look no further into the reasonableness of the attorney fees sought by the firm since a disqualified attorney will not be compensated from the estate. *See In re Grabill Corp.,* 983 F.2d 773, 777 (7th Cir. 1993).

■ Section 327(a) of the Bankruptcy Code, 11 U.S.C. § 327(a), authorizes a chap-

---

**7.** The debtor's Statement of Financial Affairs reflects that the debtor paid $26,753.87 to Daniel Partney and $68,946.55 to Doald Partney between September, 1991 and the petition date as principal and interest payments on these notes.

**8.** At his Rule 2004 examination on November 19, 1992, David Partney testified that he had been paid an annual salary of approximately $110,000, including bonuses, during the past couple of years.

ter 11 debtor in possession,[9] subject to the Court's approval, to employ one or more attorneys to represent or assist the debtor in possession in fulfilling its statutory duties. The debtor in possession's choice of counsel is limited to disinterested persons who do not hold or represent an interest adverse to the estate. *Id.*

The term "adverse interest" is not defined in the Bankruptcy Code. However, case authority holds that "[a]n adverse interest exists when two or more entities possess or assert mutually exclusive claims to the same economic interest." *In re Black Hills Greyhound Racing Ass'n,* 154 B.R. 285, 292 (Bankr.D.S.D.1993). "To represent an adverse interest includes serving as an attorney for an individual or entity holding such an adverse interest." *Id.* *Accord In re Lee,* 94 B.R. 172, 177 (Bankr. C.D.Cal.1988).

A "disinterested person" is defined in section 101(14) of the Bankruptcy Code. 11 U.S.C. § 101(14). The "catch-all clause" of this section requires that a "disinterested person" be one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason." 11 U.S.C. § 101(14)(E).

■ In order to provide the Court with the requisite information to determine whether debtor's counsel is disinterested and free of the influence of adverse interests, Rule 2014(a) of the Federal Rules of Bankruptcy Procedure requires that certain disclosures accompany the employment application. Among these disclo-

sures, the debtor's application must state "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, [or] any other party in interest.... [and] shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest...." Fed. R.Bankr.P. 2014(a).

■ The purpose of Rule 2014(a) is to ensure that all facts that may be relevant to the determination of attorney qualification are before the Court and "to permit the Court and parties in interest to determine whether the connection disqualifies the applicant from the employment sought, or whether further inquiry should be made before deciding whether to approve the employment." *In re Lee,* 94 B.R. at 176. It removes the decision of what information to disclose from the discretion of the attorney "whose judgment may be clouded by the benefits of the potential employment." *Id.*

■ If an attorney fails to disclose a relationship that presents an area of conflict, the attorney does so at his or her own risk. Section 328(c) of the Bankruptcy Code authorizes the Court to deny compensation for services and reimbursement of expenses to a debtor's counsel "if, at any time during such professional person's employment under section 327 ..., such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c).[10]

---

**9.** Section 327 is made applicable to debtors in possession by virtue of 11 U.S.C. section 1107(a).

**10.** Debtor's counsel seeks approval of compensation of $2,136 and costs of $7.78 for services performed prior to the order for relief. By their terms, sections 327 and 328 do not apply prior to entry of the order for relief—before the time that court approval is required for employment of counsel—and the standard for review of compensation under sections 327 and 328 is inapposite when pre-petition services are at issue. *In re Wiredyne,* 3 F.3d 1125, 1126–1128

(7th Cir.1993). Instead, the disgorgement of fees for services performed pre-petition is governed by sections 329(b) and 330 of the Bankruptcy Code, 11 U.S.C. §§ 329(b), 330, which authorize the Court to order disgorgement of compensation when pre-petition fees are excessive or unreasonable " 'based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title....' 11 U.S.C. § 330." *In re Wiredyne,* 3 F.3d at 1128. Although the existence of a conflict of interest is "a relevant factor in this analysis," *id.,* the court "should weigh the equi-

In the instant case, the committee and IDFA contend that the Farrell Law Firm represented both David Partney and the debtor during the stock redemption transaction, yet failed to disclose any prior connection to the debtor, or to insiders of the debtor, in the application for employment.[11] They further contend that the law firm continued throughout the pendency of the chapter 11 proceeding to place the interests of David Partney above those of the debtor in possession and its creditors. As examples of post-petition conduct indicating that the law firm was not qualified to be the debtor's counsel, the committee and IDFA cite counsel's reluctance to agree to lower David Partney's salary and the highly favorable loan repayment terms given to David Partney under the debtor's plan of reorganization. The committee finds further grounds for disqualification in counsel's refusal to take any action to recover the assets which were transferred and the loans which were forgiven at the time of the stock redemption transaction. Additionally, IDFA contends that David Partney's status as guarantor of the debtor's financial obligations to certain creditors placed constraints on counsel's treatment of those creditors during the chapter 11 proceeding.

In response, the debtor argues that the committee lacks standing to object altogether because the case has been converted to chapter 7, that the committee and IDFA are estopped from challenging the Farrell Law Firm's qualification by their delay in bringing the matter to the Court's attention, that debtor's opposition to lowering David Partney's salary and its generous provision for David Partney's loan repayment were necessary to prevent David Partney's personal bankruptcy and the adverse effect that event would have on the debtor, and that debtor failed to pursue

actions against insiders because the committee had already sought to do so and, by its own admission, was the more appropriate party for the task.

█ The Court need not address the merits of the debtor's arguments concerning standing and estoppel since the Court is entrusted with the responsibility to determine the qualification of debtor's counsel and the reasonableness of counsel's compensation independent of objections raised by any party. *See, e.g., In re Temp–Way Corp.*, 95 B.R. 343, 346 (E.D.Pa.1989); *In re Nephi Rubber Products Corp.*, 120 B.R. 477, 483 (Bankr.N.D.Ind.1990); *In re Vanderbilt Associates, Ltd.*, 111 B.R. 347, 353 (Bankr.D.Utah), *rev'd on other grounds,* 117 B.R. 678 (D.Utah 1990); *In re Wiedau's, Inc.*, 78 B.R. 904, 907 (Bankr.S.D.Ill. 1987); *In re GHR Energy Corp.*, 60 B.R. 52, 65–66 (Bankr.S.D.Tex.1985). *See also In re Carrousel Motels, Inc.*, 97 B.R. 898, 900 (Bankr.S.D.Ohio 1989) (objections to attorney compensation on basis that attorney represented an interest adverse to the bankruptcy estate "goes to the integrity of the administration of the bankruptcy laws so that it cannot be time bound").

█ With regard to the remaining allegations of counsel's conflict of interest, it is clear from the testimony of David Partney at his Rule 2004 examination that the Farrell Law Firm represented both him and the debtor during the stock redemption transaction. Representation of the debtor pre-petition is not, in itself, a basis for disqualification of counsel, 11 U.S.C. § 1107(b), and even simultaneous representation of the debtor and its controlling shareholder may be permissible. *See, e.g., In re Black Hills Greyhound Racing Ass'n,* 154 B.R. at 293; *In re Plaza Hotel Corp.,* 111 B.R. 882, 890 (Bankr.E.D.Cal.), *aff'd,* 123 B.R. 466 (9th Cir.BAP 1990) (si-

---

ties of the case," *id.,* and the decision to reduce pre-petition fees is within its sound discretion. *Id.* Here, the Court finds that counsel's pre-petition fees do not exceed the reasonable value of the services rendered and that compensation is warranted for time spent advising an existing client before the duty to obtain court approval was triggered.

**11.** In fact, the application for employment and the accompanying affidavit never mentioned counsel's representation of the debtor pre-petition, never mentioned the stock redemption transaction and never mentioned counsel's simultaneous representation of the debtor and David Partney.

multaneous representation of a debtor and its controlling shareholder "although not a disqualifying conflict per se, becomes a basis to disqualify counsel when adverse interests either exist or are likely to develop"). However, it is imperative that these relationships be fully disclosed to the Court in the application for employment. Failure to comply with the disclosure requirements of Rule 2014(a) is, by itself, enough to disqualify an attorney and deny compensation. *E.g., In re Black Hills Greyhound Racing Ass'n,* 154 B.R. at 294; *In re National Distributors Warehouse Co., Inc.,* 148 B.R. 558, 562 (Bankr.E.D.Ark.1992); *In re Tinley Plaza Associates, L.P.,* 142 B.R. 272, 278 (Bankr.N.D.Ill.1992); *In re Amdura Corp.,* 139 B.R. 963, 978 (Bankr.D.Colo. 1992); *In re EWC, Inc.,* 138 B.R. 276, 280 (Bankr.W.D.Okl.1992); *In re Hathaway Ranch Partnership,* 116 B.R. 208, 220 (Bankr.C.D.Cal.1990); *In re Plaza Hotel Corp.,* 111 B.R. at 883 & n. 2; *In re B.E.S. Concrete Products, Inc.,* 93 B.R. 228, 235–37 (Bankr.E.D.Cal.1988).

Here, there was no disclosure in the employment application or in the accompanying affidavit of the Farrell Law Firm's prepetition representation of the debtor. Additionally, there was no disclosure whatsoever about the law firm's involvement in the stock redemption transaction. Although there has been no determination on the merits of the issues raised in the committee's adversary case, the significance of the stock redemption transaction cannot be minimized. As a result of the transaction, the debtor transferred at least $820,000 of corporate assets to insiders, David Partney became the controlling shareholder and a guarantor of corporate debt to his brothers, and significant debts owed by insiders to the corporation were forgiven. It is evident that the debtor would, at the very least, need to scrutinize these dealings to determine that they were arm's length transactions untainted by preference payments and voidable transfers. It is also evident that counsel, who played an instrumental role in drafting and effecting the stock redemption transaction, might have difficulty in conducting the necessary impartial review.

Yet, none of this information was brought to the Court's attention by debtor's counsel in its employment application. The Court was precluded from examining the transaction and counsel's role in it. And, even after the committee voiced its concerns to counsel at the September 17, 1992 meeting, the Farrell Law Firm failed to disclose to the Court that issues bearing on conflict of interest and attorney disqualification had been raised. Although debtor's counsel contends that the committee and IDFA should have brought their concerns before the Court, it is clear that the duty of full disclosure rests with debtor's counsel who may not shift this responsibility onto others. *E.g., In re B.E.S. Concrete Products, Inc.,* 93 B.R. at 237 ("burden is on the person to be employed to come forward and make full, candid, and complete disclosure").

When the firm's nondisclosure of its simultaneous representation of debtor and David Partney in the stock redemption transaction is added to the brew, the situation grows more troublesome still. Questions about the firm's ability to distance itself from the interests of David Partney and to represent the debtor in possession as "fiduciary for creditors free of any compromising attitudes fostered by ownership interests," *In re Black Hills Greyhound Racing Ass'n,* 154 B.R. at 294, should have been examined by the Court when it considered the employment application. In fact, given that David Partney became a guarantor of corporate debt to his brothers as a result of the stock redemption transaction and that he was also a co-debtor on corporate obligations to two banks, his interests and those of the debtor plainly were no longer congruent when the bankruptcy case was filed. *E.g., id.* at 293–94; *In re Plaza Hotel Corp.,* 111 B.R. at 890 & nn. 23–24 (where controlling shareholders are guarantors of corporate debt, they face individual liability for the debtor's unpaid obligations and "have a powerful incentive to assure that they pay as little as possible by having the debtor pay as much as possible.... [which] entails a correlative incen-

tive to deprive the debtor of flexibility in formulating a plan of reorganization by introducing a strong bias for a particular treatment of a particular creditor, possibly at the expense of other creditors"); *In re Sixth Ave. Car Care Ctr.*, 81 B.R. 628, 630–31 (Bankr.D.Colo.1988). Accordingly, had full disclosure been forthcoming in the employment application, counsel would have been found not qualified to represent the debtor based on pre-petition factors alone.

However, full disclosure was not made and the problems caused by counsel's lack of diligence and candor in the employment application continued to infest the bankruptcy proceeding until its ultimate conversion to chapter 7. It is obvious that counsel, after the bankruptcy case was filed, continued to place the interests of David Partney above those of the debtor in possession in the protection and enhancement of the estate. This is shown by the debtor's opposition to the lowering of David Partney's salary and by the overly generous terms set forth in the plan of reorganization for David's repayment of his loan from the debtor. The debtor argues that financial relief for David was necessary to prevent his personal bankruptcy, the occurrence of which would have shattered the reputation and viability of the debtor. However, this argument is purely speculative and is belied by the fact that the debtor initially opposed a salary reduction for David from $139,600 although he had been paid only $110,000 annually for several years prior to the debtor's bankruptcy filing. Moreover, it is difficult to comprehend why David's personal bankruptcy would cause greater harm to the debtor's reputation and ability to generate business than would the debtor's own bankruptcy filing which was a fait accompli.

Counsel's decision to render legal advice and to give consideration to the economic well-being of David Partney personally at the expense of debtor's unsecured creditors reflected a primary allegiance to the debtor's controlling shareholder rather than to the debtor. *See, e.g., In re United Utensils Corp.*, 141 B.R. 306, 308–309 (Bankr. W.D.Pa.1992); *In re Roger J. Au & Son, Inc.*, 65 B.R. 322, 334–35 (Bankr.N.D.Ohio 1984), *aff'd*, 64 B.R. 600 (N.D.Ohio 1986). The fact that counsel held itself out as representing only the debtor, while in reality serving another master, did not free counsel from the requirement of disinterestedness. *See In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 751–53, 754 (Bankr. N.D.Tex.1988); *In re Chou–Chen Chemicals, Inc.*, 31 B.R. 842, 852 (Bankr.W.D.Ky. 1983).

The law firm's representation of an interest adverse to the estate is shown as well by the stonewalling which occurred in response to the committee's requests that the debtor investigate potential claims against insiders to recover assets transferred as a result of the stock redemption transaction. Whether or not the claims raised in the committee's adversary case have merit remains undetermined. However, the debtor in possession was derelict in refusing to investigate the transfers and in failing to rebut the committee's serious charges. *See In re Temp–Way Corp.*, 95 B.R. at 344–46. Its inaction was based, not on deference to the committee's decision to proceed with litigation, but rather on David Partney's attitude, as reflected during his Rule 2004 examination, that he would not renege on the promises he had made to his brothers. Counsel's failure to insist that the debtor fulfill this obligation placed the law firm in a position adverse to the interests of the estate. Due to the concerns of its controlling shareholder, the debtor was not fulfilling its fiduciary obligation to the bankruptcy estate, and it was the duty of the debtor's counsel to bring these matters to the Court's attention. *See, e.g., In re United Utensils Corp.*, 141 B.R. at 309.

Having found that counsel failed to make the full and candid disclosure required by Bankruptcy Rule 2014(a), and that counsel was, from the inception of the bankruptcy case, not qualified to represent the debtor, the Court will not allow compensation and costs to be paid to counsel from the estate for any services performed after the entry of the order for relief. The retainer held by counsel in its trust account, less an

allowance for pre-petition fees and costs, must be returned to the estate. *E.g., In re Grabill Corp.*, 983 F.2d at 777; *In re Neidig Corp.*, 113 B.R. 696, 699 (D.Colo.1990); *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. at 753. While the Court acknowledges that this is a harsh result considering the extent of the services performed by counsel, it is fair to say that counsel placed itself in this unfortunate position by its lack of diligence and candor when seeking the Court's approval of its employment. Certainly, early disqualification would have been less painful than the denial of compensation and the disgorgement of fees which the Court must now enforce.