**In the Matter of Frank Pio CRIVELLO, Debtor.**

**Bankruptcy No. 92–27252–CNC–7.**

United States Bankruptcy Court, E.D. Wisconsin.

April 1, 1996.

AMENDED MEMORANDUM DECISION

C.N. CLEVERT, Chief Judge.

The United States Trustee is asking the court to deny the final application for compensation and reimbursement of expenses filed by the law firm of Kravit, Gass & Weber, S.C. (KGW), counsel for Frank Pio Crivello as Chapter 11 debtor-in-possession.

The U.S. Trustee objects to KGW's application on multiple grounds, including the law firm's ineligibility for appointment as Chapter 11 counsel due to a lack of disinterestedness; unreasonably high fees and expenses relative to the results achieved in the aborted Chapter 11 case; the apparent lack of benefit to the estate of some services; and submission of the application in derogation of Local Rule 3.02 and Fed.R.Bankr.P. 2016, requiring detailed statements of services and expenses.

The following constitutes the court's findings of fact and conclusions of law.

## I. *BACKGROUND*[1]

Frank Pio Crivello (Frank) commenced this case by filing a voluntary Chapter 11 petition on November 20, 1992. On December 8, 1992, as debtor-in-possession, he sought employment of KGW as counsel, pursuant to 11 U.S.C. §§ 1107(a) and 327(a). Frank's application and KGW's Affidavit of Disinterestedness, filed pursuant to Fed. R.Bankr.P. 2014(a), stated that KGW did not hold any interest adverse to Frank or the Chapter 11 estate. KGW's affidavit also said the firm received a $10,000 retainer from National Management, Inc., for legal services rendered or to be rendered in connection with the Chapter 11 case. On February 8, 1993, the application was approved.

Subsequently, it came to light that KGW began representing Frank in various civil matters during the first half of 1991; that Frank and Joseph Crivello (Joseph) are cousins; that KGW represented Frank and Joseph in matters in which they and/or entities controlled by them were sued jointly; that National Management was a creditor; that Joseph was the sole stockholder of National Management; and that National Management made a series of prepetition payments to KGW for the firm's concomitant representation of Frank and Joseph. Later, it was also found that on November 3, 1992, seventeen days prior to the Chapter 11 filing, Fifth Corporation, an entity owned either directly or indirectly by Joseph, paid KGW for services rendered on behalf of Frank, individually, or Frank and Joseph concurrently. Furthermore, it was revealed that KGW was not authorized by National Management and Fifth Corporation to disclose the terms upon which they engaged the firm or the payments they made for the firm's services in connection with other matters.

Immediately prior to the November 20, 1992, petition date, Frank owed KGW approximately $42,500 for legal services for criminal and civil matters unrelated to the Chapter 11. KGW's March 10, 1995, Supplement to Amended Affidavit of Disinterestedness, represented that Frank owed $14,434.89 for criminal defense work, plus approximately $3,668.69 for unbilled services from November 1, 1992, to November 19, 1992. The affidavit further represented that the firm waived its claim against Frank for criminal legal services. *See also* Response of KGW to U.S. Trustee's First Set of Interrogatories at 5. Nonetheless, on April 30, 1993, KGW applied funds obtained from Sierra Holding Corporation, an entity wholly owned by Joseph, to the "waived" prepetition debt and unspecified post-petition debt. KGW received these funds from Sierra Holding Corporation on December 31, 1992, as part of a $50,000 flat fee retainer for future services to be rendered on behalf of Sierra Finance Co., yet another company wholly owned by Joseph.

In February of 1994, Joseph personally retained KGW. On that occasion, the law firm was to advise him regarding a potential gaming venture unrelated to the Chapter 11.

On October 25, 1993, and June 2, 1994, KGW sought interim compensation in the Chapter 11 case. The June 2, 1994, application was amended on September 19, 1994.[2] Each application acknowledged that KGW received funds from National Management for defending nondischargeability actions against Frank in the Chapter 11.

---

1. Most of the facts set forth herein have been agreed to in a Statement of Stipulated Facts submitted by KGW and the U.S. Trustee. Additional facts are gleaned from the file and proceedings and are included to paint a clearer picture for the reader.

2. Prior to that time, on August 9, 1994, Crivello's case was converted to one under Chapter 7.

The Supplemental Attorney's Statements KGW filed on October 27, 1994, December 6, 1994, January 17, 1995, and April 19, 1995, disclosed that the firm received additional funds from National Management for other services it provided to Frank after the Chapter 11 was converted to Chapter 7 and for nondischargeability defense work prior to the conversion.[3] During the Chapter 11, National Management also paid or advanced funds to Frank and his wife for personal expenses. Some of these funds were reimbursed and the balance was treated as a gift. Additionally, Berkshire Factoring, Inc., another entity owned directly or indirectly by Joseph, paid $45,542 to KGW on September 3, 1993, for legal services provided to Frank.

## II. *DISCUSSION*

### *Chapter 11*

A Chapter 11 debtor-in-possession (DIP) stands in the shoes of a trustee and acquires the same rights, duties and responsibilities, except as otherwise provided by the Bankruptcy Code (Code). 11 U.S.C. § 1107(a). Section 327(a) of the Code, allows a DIP to employ an attorney, accountant, or other professional person to represent the DIP. A professional will not be disqualified for employment by the DIP "*solely* because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b) (emphasis added). However, professional employment under § 327(a) hinges on two requirements: disinterestedness and not holding or representing an interest adverse to the estate.[4]

Section 101(14) of the Code defines a "disinterested person." Subsections (A) and (E) of the section read as follows:

"disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider;

   \*    \*    \*    \*    \*    \*

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason.

11 U.S.C. § 101(14).

Subsection (E) has been referred to as a catchall clause, expansive enough to encompass anyone who may have an interest in or relationship with the debtor, tending to color the objective and impartial perspective required of attorneys and other professionals by the Code. 2 COLLIER ON BANKRUPTCY ¶ 327.03[3][f]; *In re Global Marine, Inc.,* 108 B.R. 998, 1005 (Bankr.S.D.Tex.1987). "[A] 'disinterested person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.'" *In re Kendavis Indus. Int'l,* 91 B.R. 742, 754 (Bankr.N.D.Tex.1988) (quoting *In re Martin,* 817 F.2d 175, 181 (1st Cir. 1987)).

■ Implementing sections 101(14) and 327(a) of the Code is Fed.R.Bankr.P. 2014(a), which requires disclosure of the proposed compensation arrangements, and the professional's known connections with the debtor,

---

**3.** The dates and payments from National Management to KGW were as follows:

| Date | Amount (in dollars) |
| --- | --- |
| a. 8/3/92 | 7,258.09 |
| b. 10/1/92 | 6,910.50 |
| c. 11/2/92 | 13,765.21 |
| d. 11/20/92 | 10,000.00 |
| e. 3/4/93 | 20,000.00 |
| f. 4/30/93 | 13,000.00 |
| g. 7/15/93 | 30,000.00 |
| h. 10/20/93 | 23,150.07 |
| i. 10/21/93 | 2,179.73 |
| j. 11/19/93 | 30,000.00 |
| k. 2/15/94 | 11,171.37 |
| l. 5/10/94 | 18,030.95 |
| m. 7/20/94 | 22,478.78 |

| Date | Amount (in dollars) |
| --- | --- |
| n. 8/18/94 | 28,142.80 |
| o. 9/6/94 | 15,000.00 |
| p. 10/12/94 | 10,000.00 |
| q. 11/22/94 | 10,000.00 |
| r. 12/27/94 | 70.82 |
| s. 12/31/94 | 8,818.61 |
| t. 3/20/95 | 1,391.20 |

**4.** 11 U.S.C. § 327(a) states:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

creditors, other parties in interest, their attorneys and accountants, the U.S. Trustee or any person employed by the U.S. Trustee. Extensive disclosure prior to engaging a professional is designed to assist the court in determining whether the professional has divided loyalties which may result in employment that is not in the best interest of the estate. *See, e.g., Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463 (2d Cir.1981) (construing former Bankruptcy Rules 215 and 219), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Michigan General Corp.*, 78 B.R. 479 (Bankr.N.D.Tex.1987), *aff'd in part and rev'd in part*, 88 B.R. 773 (N.D.Tex.1988). This disclosure requirement is strictly construed and applicants seeking employment do not have a unilateral right to withhold information required by the Rules and Code, regardless of how attenuated the connection may be. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 881–82 (9th Cir.1995) (citing cases), *cert. denied*, —— U.S. ——, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996). *See also Woods v. City Nat'l Bank and Trust Co.*, 312 U.S. 262, 266–69, 61 S.Ct. 493, 496–97, 85 L.Ed. 820 (1941); *In re Grabill Corp.*, 983 F.2d 773, 776–77 (7th Cir.1993); *In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925 (2d Cir.1979); *In re The Leslie Fay Companies, Inc.*, 175 B.R. 525, 532 (Bankr.S.D.N.Y.1994); *In re Michigan General Corp., supra; In re Coastal Equities, Inc.*, 39 B.R. 304 (Bankr. S.D.Cal.1984). As stated in *Futuronics*, 655 F.2d at 470:

> [T]he duty of counsel for the debtor in a bankruptcy proceeding to disclose fully to the court all connections that may exist between counsel and the debtor, the creditors, any party in interest and their respective attorneys arises not solely by reason of the bankruptcy rules, but also is founded upon 'the fiduciary obligation owed by counsel for the debtor to the bankruptcy court.'

(quoting *Arlan's Dep't Stores*, 615 F.2d at 937).

A failure to disclose any of the connections contemplated by these provisions, even if negligent or inadvertent, may be the basis for the denial or disgorgement of fees, and/or disqualification from further representation. 11 U.S.C. § 328(c);[5] *In re Park–Helena Corp.*, 63 F.3d at 882; *Grabill*, 983 F.2d at 777 ("[t]he scattered cases ... that allow a lawyer to be compensated who, lacking the requisite disinterest, could not have been appointed seem to us just plain wrong." (citations omitted)); *Leslie Fay, supra; Futuronics, supra; In re Coastal Equities, Inc.*, 39 B.R. at 308 ("if ... an attorney holds an undisclosed interest, the court is empowered to deny all compensation and reimbursement of expenses. If the duty to properly disclose is neglected, however inadvertently, the attorney performs services at his peril."). *See also Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1319–20 (6th Cir.1995) (holding that a valid appointment under § 327 is a condition precedent to receiving compensation under § 330; where a professional is later found not to have been disinterested at the time of appointment, there can not have been a valid appointment under § 327 and compensation must be denied). Moreover, it has been held that in bankruptcy cases there can be no waiver of a conflict of interest. 2 COLLIER ON BANKRUPTCY ¶ 327.03[4]; *In re Amdura Corp.*, 121 B.R. 862 (Bankr.D.Colo.1990); *In re American Printers & Lithographers*, 148 B.R. 862 (Bankr.N.D.Ill.1992).

### Sufficiency of KGW's Disclosure

KGW's disclosure in this case may be characterized as deficient, at best, or as a fraud on the court, at worst. *See, e.g., In re Guard Force Mgt., Inc.*, 185 B.R. 656, 664 (Bankr.D.Mass.1995). This applies to the need to divulge the various relationships be-

---

**5.** Section 328(c) provides:

Except as provided in section 327(c), 327(e) or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 ... of this title *if, at any time during such professional person's* employment ... *such professional person is not a disinterested person*, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

(emphasis added).

tween and among National Management and the other business entities controlled in whole or in part by Frank and Joseph individually, Frank and Joseph jointly, the Cambridge Business Finance Co.,[6] as well as the Richfield Center Transaction,[7] and may form an independent basis to deny compensation. *See Coastal Equities, supra; In re Churchfield Mgt. & Inv. Corp.,* 100 B.R. 389, 393 (Bankr.N.D.Ill.1989).

For starters, as previously indicated, Joseph is Frank's cousin and the primary shareholder of various entities with which Frank and KGW did business. Joseph is also the principal of Berkshire Factoring, Sierra Holding Corporation and Fifth Corporation, business entities to which Frank transferred funds immediately prior to filing for Chapter 11. Moreover, Frank trans-

ferred assets to Joseph prepetition;[8] National Management[9] paid KGW for representing Frank; and National Management is controlled by Joseph. Additionally, National Management employed Frank as a consultant prior to January 1, 1993, and as executive vice president thereafter, through the date of conversion to Chapter 7.

In the face of these relationships and payments, it is doubtful whether KGW could or would take a position contrary to National Management, Joseph or the other entities paying for its services, at the risk offending the "hands that feed it."[10]

This doubt is compounded because KGW waited until January 19, 1995, more than three years after filing the petition, to disclose that it did prepetition work for Joseph. Furthermore, when KGW did disclose its

---

6. The controversy surrounding the Cambridge Business Finance Co. (Cambridge) arose as follows: In or about November, 1990, Frank executed a promissory note for approximately $3.25 million, payable to First Bank, N.A. Thereafter, First Bank assigned its interest in the note to David J. Wabick, who sold the note to Cambridge on January 15, 1992. Cambridge, which was incorporated in October, 1991, is owned and controlled by Joseph.

On February 7, 1992, Cambridge sued the debtor in the Waukesha County Wisconsin Circuit Court. On the same day, Frank executed an admission of service, stipulation and order consenting to entry of judgment against him in the amount of $3.6 million, including the principal and interest due on the First Bank note. A stipulated judgment was entered February 10, 1992, in Waukesha County and then docketed in Milwaukee County on February 12, 1992, thereby creating a lien in favor of Cambridge on Frank's Milwaukee County real estate, including his River Hills residence, worth an estimated $1.2 million.

Early in 1993, Frank's Chapter 11 Committee of Unsecured Creditors demanded that he, as debtor-in-possession, avoid the Cambridge lien as a preferential transfer to an insider within one year of bankruptcy. KGW filed a motion for Frank seeking to compromise the controversy with Cambridge, or potential controversy, on May 10, 1993. After a limited objection by the Committee and a hearing, the court entered and order approving the compromise on August 8, 1994.

7. This real estate transaction involved Richfield Center, a strip mall co-owned by Frank and Joseph. Frank and Joseph sought to sell their interests in the property, with Frank (and hence the estate) to receive $25,000.00 and Joseph to receive $375,000.00 and assume certain liabili-

ties. Upon objection to the sale by the Creditor's Committee, the court denied Frank's motion to approve the transaction. Subsequently, the terms of the transaction were revised to provide the estate with 50% of the proceeds of the sale, and the sale was approved.

8. At a hearing on this matter on August 31, 1995, it was revealed that, in addition to the Cambridge and Richfield Center transactions, *supra* notes 6 and 7, KGW had represented Frank and Joseph prepetition regarding "joint ventures." It is unclear whether Frank and Joseph were codebtors for these engagements. However, what is clear is that KGW initiated several adversary proceedings to recover properties (perhaps the subject of the joint ventures) that had been transferred to entities owned or controlled by Joseph, Frank, or both.

9. It is interesting to note that National Management was incorporated virtually simultaneous with Cambridge's purchase of Frank's $3.25 million note in January 1992. See note 6 *supra.*

10. *In re 765 Assocs.,* 14 B.R. 449 (Bankr.D.Hawaii 1981), is factually similar to the instant case and instructive. There, the Bankruptcy Court for the District of Hawaii denied compensation to the attorney for the DIP where the attorney had been receiving funds from a creditor-corporation (*i.e.,* National Management) controlled by an insider of the debtor who was also a creditor (*i.e.,* Joseph Crivello). The court found the situation to have "posed a great temptation for the Debtor's attorney to deviate from his duty of undivided loyalty to his client, the Debtor[,]" *id.* at 451, and went on to hold that "[a]n attorney representing a debtor should not receive compensation from any of the creditors, directly or indirectly." *Id.*

relationship with Joseph, it was only at the prompting of the U.S. Trustee, who has vigorously objected to awarding KGW compensation.

■■■ KGW's January 19, 1995, Amended Affidavit of Disinterestedness, explains the firms initial failure to disclose that it represented Joseph by stating that the firm performed a careful cross-check and review of its former clients and that it did not discover Joseph's name. KGW's failure to disclose that it represented Joseph cannot be ignored. Negligence is no defense to failing to make the required disclosures. *In re B.E.S. Concrete Prods., Inc.,* 93 B.R. 228, 237 (Bankr. E.D.Cal.1988); *In re Michigan General Corp.,* 78 B.R. at 482; *In re Coastal Equities, supra.* Moreover, a professional's connections with creditors, insiders, and parties in interest must be disclosed, no matter how trivial, *In re Guard Force Mgt., Inc.,* 185 B.R. at 661; *In re Envirodyne Indus., Inc.,* 150 B.R. 1008, 1021 (Bankr.N.D.Ill.1993); *In re EWC,* 138 B.R. 276, 281 (Bankr.W.D.Okla. 1992), as the purpose of the disclosure requirements is to ensure that all relevant facts are before the court to permit the court and other parties in interest to determine if further inquiry should be made prior to approving the application for appointment. *In re Granite Sheet Metal Works, Inc.,* 159 B.R. 840, 845 (Bankr.S.D.Ill.1993).

Why KGW waited at least one year to disclose its postpetition representation of Joseph, an insider-creditor,[11] remains a mystery. *See Rome v. Braunstein,* 19 F.3d 54, 59 (1st Cir.1994) ("as soon as counsel acquires even constructive knowledge reasonably suggesting an actual or potential conflict ... a bankruptcy court ruling should be obtained." (citations omitted)); *In re Tinley Plaza Assocs.,* 142 B.R. 272, 278 (Bankr. N.D.Ill.1992) ("the duty to disclose continues beyond the initial stage of application to employ counsel.... If a conflict arises after attorneys are employed by the debtor-in-possession, such conflict must be disclosed to the court...." (citations omitted)); *In re Huddleston,* 120 B.R. 399, 400–401 (Bankr.

E.D.Tex.1990) ("the burden of disclosure is upon 'the person making the statement to come forward with the facts pertinent to eligibility and to make, candid and complete disclosure.'" (citations omitted)); *In re B.E.S. Concrete,* 93 B.R. at 237.

KGW's loyalty is subject to additional question because it is one of Frank's prepetition creditors, and perhaps a creditor of Joseph as well, see *supra* note 8. Even assuming that KGW actually waived its claim against Frank prior to the filing of the petition, as asserted in its Supplement to Amended Affidavit of Disinterestedness, dated March 10, 1995, it would have been prudent to disclose the debt and waiver in its employment affidavit, rather than doing so after the U.S. Trustee ferreted out the issue. *See In re MFlex Corp.,* 172 B.R. 854, 858 (Bankr.W.D.Tex.1994) ("the Applicant did not disclose his substantial pre-petition claim and his agreement to waive such claim until several months after filing of the case. For the waiver of the claim to be enforceable there had to be consideration.... Therefore, the waiver should have been disclosed as part of the compensation package."). Regardless, KGW's failure to disclose its prepetition claim against Frank militates in favor of finding the debt was not waived prepetition. Such finding is buttressed by the Stipulated Facts and the March 10, 1995, Supplement to Amended Affidavit of Disinterestedness, both of which acknowledge that Frank's prepetition debt to KGW was paid postpetition by entities controlled by Joseph. *Cf. In re Estes,* 57 B.R. 158 (Bankr.N.D.Ala.1986) (holding employment of law firm/creditor to be improper where debt was for prepetition services unrelated to the bankruptcy). Additionally, at the fee hearing on August 31, 1995, KGW indicated there was no documentation or other proof that it waived Frank's prepetition debt, but maintained that such deficiency was unintentional.

In view of the circumstances surrounding the alleged waiver of fees and the absence of documentation, the court cannot conclude

---

11. 11 U.S.C. § 101(31)(A)(iv) states that insiders include corporations in which an individual debt-

or is a director, officer or person in control.

that KGW waived its prepetition claim. On the other hand, the court does find that KGW willfully failed to disclose critical facts and connections with Frank—most notably that the law firm represented Frank for almost two years prior to bankruptcy, and has attempted to thwart the disclosure requirements.

Had KGW disclosed the debt waiver and the firm was otherwise disinterested, perhaps the order of appointment would not now be subject to attack. *In re Coastal Equities, Inc.*, 39 B.R. at 308. ("A court may determine that an attorney is disinterested and may authorize appointment where a prepetition claim against the debtor has been waived.") But here, KGW's piecemeal disclosure has cast a shadow on the law firm's motives and actions. *See Wolf v. Weinstein*, 372 U.S. 633, 641, 83 S.Ct. 969, 975, 10 L.Ed.2d 33 (1963) ("a fiduciary may not receive compensation for services tainted by disloyalty or conflict of interest." (footnote and citations omitted)). Moreover, Frank's failure to swiftly prosecute claims against Joseph and Cambridge, and his initial attempt to consummate the Richfield Center transaction to Joseph's advantage, weighs heavily against finding KGW was a disinterested person entitled to appointment under 11 U.S.C. § 327(a). Consequently, it is the decision of the court that KGW was not disinterested when it was appointed as Chapter 11 counsel and that the order of appointment, dated February 8, 1993, should be vacated. It follows that KGW's application for compensation and reimbursement of expenses as Chapter 11 counsel will be denied.